CHIEF JUSTICE PETERS
delivered the opinion oe the court.
This action was brought by appellees against appellant to recover a tract of land in his possession, situate in Webster County, which they claim was devised by the late Robert Curry to his son, James Curry, for life, remainder to his four daughters (the appellees), Mrs. S. M. Page, Mrs. Nannie Gist, Mrs. Mary Gist, and Miss Laura Curry.
The derivation of title, as set out in the petition, is admitted in the answer of appellant; but he alleges that James Curry, the life-tenant, died in 1865 intestate, leaving his four daughters, infants under twenty-one years, of age, and prior to January, 1868, H. H. Smith was appointed their statutory guardian by the Webster County Court; that in the last-named month and year a petition was filed in the proper court, in the name of said infants, by Smith, their statutory guardian, for a sale of the land devised to them by their grandfather, being about three hundred and eleven acres; and in their petition it was alleged that they had no other estate; that the rents and profits arising from the land were inadequate to the maintenance and education of said infants, and that a sale of it would be greatly to their advantage; and a sale was prayed for.
Appellant further alleges that the land, under an order of court, was surveyed, and divided into two lots; and the court adjudged a sale thereof in two parcels; and that he became the purchaser of lot “No, 1,” containing one hundred and *204 seventy-six acres, being the same for which he is now sued, at the price of $880.76, all of which he paid to Smith, guardian as aforesaid, after the sale had been approved and confirmed by the court ; and that Smith had accounted for and paid over to his said wards and their husbands every dollar for which the land sold. He prays that in case it should be adjudged that he did not acquire the title to the land by his purchase as aforesaid, that he should have the price he paid for it refunded to him, and that he be paid for valuable and lasting improvements put on the land by him since his purchase; and to that end he made his answer a cross-petition against appellees, and asked for a transfer of the cause to the equity docket.
The transfer was made, and appellees demurred to the answer. Their demurrer was sustained; and appellant having declined to answer further, the cause was submitted on final hearing, and the court adjudged that the decree of the Webster Common Pleas Court rendered at its term, 1868,. in the case of James Curry’s heirs, ex parte, decreeing and directing a sale of the infants’ land, was absolutely void, and that said sale, and the commissioner’s deed thereunder, passed no title to the purchaser, and adjudged the land in possession of appellant to appellees; and from that judgment he has appealed.
It is insisted by counsel for appellees that the sale was void —-first, because the statute regulating the sale of infants’ real estate required that the court should appoint three commissioners, who should report, among other things, whether the interest of the infants required the sale to be made.
Article 3, chapter 86, Revised Statutes, page 592, required that before a court should have jurisdiction to decree a sale of infants’ real estate — 1. Three commissioners should be appointed to report, and must report under oath to the court the net value of the infant’s real and personal estate, and the annual profits thereof, and whether the interest of the infant or idiot required the sale to be made.
*205 In construing this section of the statute, in Wells v. Cowherd’s heirs (2 Metcalfe, 514), this court said: “The only legitimate inquiry with us is, have the plain requirements of the statute, which protects and guards the rights of infants by a strict limitation of the jurisdiction of the courts over their property, been complied with ? If not, then, in the language of the statute, 'any decree, sale, or conveyance thereof shall be void,’ and must be so pronounced, however inconvenient or disastrous the consequences to particular individuals.”
In that case neither the report.of the commissioners nor the bond of the guardian came up to the requirements of the statute, and the proceeding was by rule against the purchaser of the land to compel him to pay the purchase-money; and this court directed the rule to be dischai’ged. In this case the language of the learned judge who delivered the opinion is broader and more comprehensive than that of the statute itself.
In Bell v. Clark (2 Met. 573), which was a proceeding by the purchaser at a sale of infants’ real estate to quash the sale, this court held that the report of the commissioners was insufficient ; and that being the case, the court had no jurisdiction to decree the sale of the land, and ordered the same to be quashed.
In Mattingly’s heirs v. Read (3 Met. 524), which was also a proceeding to set aside a sale of infants’ real estate by Read, one of the purchasers, the sale was set aside by the court for the non-conformity of the report of the commissioners to the requirements of the statute.
In Woodcock, &c. v. Bowman, &c. (4 Met. 40), a proceeding by the purchaser to set aside the sale of infants’ real estate, because the commissioners’ report and the bond of the guardian were insufficient, the sale was set aside, because the commissioners failed to report the net value of the infants’ real and personal estate and the annual profits thereof; but the bond, although informal in some respects, was held to be sufficient.
*206 In Watts, &c. v. Pond, &c. (4 Met. 61), the sale of infants' real estate was quashed, on motion of the purchaser, because the report of the commissioners did not conform to the requirements of the statute.
But in Thornton, &c. v. McGrath, &c. (1 Duvall, 349), this court carefully considered and reviewed the preceding adjudications, with the view to ascertain the meaning attached by the court and the legislature to the word “void.” After discussing the question at some length, the court says these decisions embrace only two classes of cases — -first, those in which the purchaser sought a cancellation of his bonds, because a good title could not be assured by infants not concluded by a voidable sale; and, second, those in which the infants sought relief against the sale, claiming, rightfully, to avoid it or have it declared void. To sustain these decisions it was immaterial whether the sales were void or voidable.
The court also said the common law pronounces a certain class of deeds by infants “void;” but still it will be admitted that no such deed could be treated as void under all circumstances by the infant, and especially by the other and adult party to it. In that class of cases, as in many other’s, “void” and “voidable” are used indiscriminately by legislators and jurists without regard to their true contra-distinctive imports; and such is peculiarly the “misuse” of the term “void” when applied to the contracts of infants.
Infants may be sufficiently protected by declaring their contracts voidable at their own election; and to make them void, in the true sense of the word as to both parties, might frustrate the object of their protection, and pervert an intended blessing into a curse to them by depriving them of the profits of beneficial contracts. And consequently the practical construction of the word void is as to them voidability only in all cases of contracts made by themselves. And why should a different effect be given to their contracts made, for their *207 benefit, under tbe guardian care and considerate counsel of their statutory guardian, and their political mother, the commonwealth, which ought to be even more binding?
But this court, in construing section 2, article 3, chapter 86, Revised Statutes, in the case last cited, said that the statute failing to declare the decree or sale void for any other cause than the non-execution of the bond, might authorize the presumption that for any other non-conformity it intended that they should be erroneous or voidable only; and that by the words “no jurisdiction to decree a sale” the statute contemplated a denial of authority rightfully to decree a sale by a court, although it had undoubted jurisdiction of the case and over the parties and subject-matter.
This interpretation of the statute is consistent with established legal principles, and meets the requirements of justice; and we may add that it has been approved by this court in the later case of Woodcock, &c. v. Bowman, &c. (2 Duvall, 508). That opinion was delivered on the third appearance of the case in this court. The defect for which the judgment was reversed on the first appeal was the failure of. the commissioners to report the net value of the infants’ real estate, as we have heretofore suggested; and in the last opinion rendered it is said: “ The revised statute does not in terms declare a sale void for any of the defects adjudged to exist in the present case” — meaning, as may be inferred, that unless the defect is such as the statute in terms declares will render the sale void, it will not be so held.
In the proceedings under which appellant purchased, commissioners were appointed to report, and they did report, under oath, to the court. Their report was somewhat defective; but the defect was not such as, by the terms of the statute, rendered the sale void. It was only voidable for that defect.
But it is contended that the. covenants executed by the guardian were not such as were required by the statute. In *208 the bonds executed by the guardian he and his sureties covenant that he will faithfully discharge and execute all orders and decrees that may be rendered in this cause. The statute requires that the bond shall stipulate for a faithful discharge of all his duties under the act, and under any order or decree of the court in pursuance thereof.
The covenants as executed are substantially, if not literally, such as are required by the statute. . The proceedings were under chapter 86, Revised Statutes; and a covenant for a faithful discharge of all the orders and decrees rendered in the cause is, in effect, a covenant to discharge all orders and decrees of the court in pursuance of said act.
But no prejudice has resulted or can result to appellees even if the bonds were substantially defective, since the former guardian has paid over the whole of the purchase-money, with the accrued interest, to the husbands of three of his late wards and to the subsequently appointed guardian of the other one.
It is not alleged that the land was not sold for a full, fair price. The sale was a public one, under a judgment of the court; and the conduct of appellant, the purchaser, is without censure or blame. He has paid the stipulated price, all of which appellees have received; and they are now asking a court of equity to take the land from him, with his money in their pockets, without refunding or offering to refund to him one dollar of it. A court of equity will not put a constrained construction on the statute to consummate such a result.
Nearly, if not quite, all the decisions cited to sustain the position of appellees are in cases where the purchasers were seeking to cancel their bonds, because a good title could not be assured to them by infants not concluded by a voidable sale; and it was not material to the parties seeking relief whether the sales were adjudged “void” or only “voidable,” as they had not parted with their money. But in this case the purchase-money is all paid, and if the sale is declared void, appellant must lose *209 it. This the statute does not require in express terms, .and we are not authorized so to interpret it. If appellees desire to set aside the sale, they must do so on equitable principles, by an offer to refund the purchase-money paid by appellant, and an equitable adjustment of an account of rents, interest, improvements, waste, etc.
Wherefore the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.