CASE 39—ACTION FOR A SETTLEMENT OF THE ESTATE OF PLAINTIFF'S INTESTATE—DEC. 19.

# Elliott v. Fowler, &c.

### APPEAL FROM CHRISTIAN CIRCUIT COURT.

JUDGMENT MAKING ABSOLUTE, RULE IN FAVOR OF W. T. FOWLER AGAINST THOS. H. ELLIOTT TO PAY MONEY, AND ELLIOTT APPEALS. REVERSED.

SALES OF INFANT'S REAL ESTATE—VOID JUDGMENT—FAILURE TO COMPLY WITH STATUTORY REQUIREMENTS.

Held: A judgment for the sale of an infant's real property, and a sale made thereunder, are void, unless all the provisions of the statute authorizing the sale have been strictly complied with; and therefore, under Civ. Code Prac., section 489, authorizing the sale of an infant heir's estate in real property for the payment of a debt of the ancestor in an action brought for a settlement of the ancestor's estate, a judgment rendered in such an action for a sale of all the decedent's land before the amount of the indebtedness had been ascertained, and without any allegation as to its amount, and the sale made thereunder, were void as to its infant heir, to the extent that more land was sold than was necessary to pay debts, though the petition alleged that it would be to the interest

Elliott v. Fowler, &c.

of all the heirs to sell all the land, the record showing that the land was divisible without impairing the value of any interest.

DOWNER & RUSSELL, FOR APPELLANT.

1. We hold that the court had no jurisdiction to sell any more of the infant's real estate, than was necessary to pay the debts against it, and that the judgment of Dec. 7, 1889, is, as against the infant, and to that extent, null and void.

2. If said judgment is to be upheld *in toto*, and against the infant, then the orders made by the court directing appellant, Elliott to pay said money to the commissioner, are only erroneous and not void, and fully protect the appellant in the payments made under them.

3. If the judgment of June 29, 1900, is valid, and must be paid, then we contend that the appellee, T. J. Moore, should pay his proportionate part of same; that proportionate part to be based on the prices which said two tracts of land brought when sold at commissioner's sale, on the 7th day of July, 1900.

### CLASSIFICATION.

1. Is the judgment of Dec. 7, 1889 valid or void? Civil Code, secs. 489, 428, 745 and 518, sub-sec. 8; Walker **v.** Smyser, 80 Ky., 620; Meddis v. Bull ,13 R., 767; Tyler v. Jewell, 10 R., 887; Bill v. Burgess, 15 R., 41; Gill v. Given, 4 Metc., 197.

2. Voidable and erroneous orders. Hynes v. Oldham, 3 T. B. Mon., 267; Freeman on Judgments, sec. 116; Dawson, &c., v. Litsey, 10 Bush, 408; DeBard v. Gatewood 4 R., 230; Hardin v. Hardin, &c. 6 R., 662; Todd v. Dowd's Heirs, 1 Metc., 284

C. H. BUSH, ATTORNEY FOR T. J. MOORE.

Classification of questions involved in the record and discussed in brief.

1. Can T. H. Elliott complain of judgment and sale? Farmers's Bank v. Peter, &c., 13 Bush, 591; Humphrey's Exr. v. Wade, 84 Ky., 400.

2. Was the judgment and sale thereunder void or voidable? Thornton, &c., v. McGrath, &c., 1 Duvall, 350; Civil Code, sec. 428, 489, 490, 493, 496, 497; Friddle &c., v. Kohn, 14 R., 312; Bacon v. Bills, 6 Ky. Rep., 217; Shelby, &c., v. Harrison, 7 R., 818; 84 Ky., 144.

3. Is T. J. Moore liable in any event, if there is any liability to Davis Tuck, Jr.? Is not T. H. Elliott alone liable?

BREATHITT & FOWLER, ATTORNEYS FOR W. T. FOWLER, AS GUARDIAN FOR DAVIS G. TUCK, JR.

1. The original decree entered in the case of B. J. Tuck's Admr. v. L. D. Potter, &c., is not void in any particular; but the subsequent order made by the court on December 12, 1891 is void. Kendall v. Briggs, 81 Ky., 119; Sawyer & Wallace Co.'s Assignee v. Fuqua, &c., 20 R., 1 Schlentker, & Co. v. Glade, 20 R., 205; Washam v. Lancaster, 20 R., 701; Civil Code, sec. 497.

2., The statutory guardian upon the execution of the bond provided for by sec. 497, Civil Code, is entitled to have the purchaser pay over the money due the ward. Civil Code, sec. 497; Kendall v. Briggs, 81 Ky., 119; Barrett v. Buhl, 81 Ky., 127.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

In this suit to settle the estate of Mrs. B. J. Tuck, deceased, it was alleged in the petition that the personal estate was insufficient to pay her indebtedness, and that it would be necessary "to sell some part or all of the realty" owned by the decedent at her death. She owned about 900 acres of land in Christian county, and left, as her heirs at law, she having died intestate, two adults and one infant child, and an infant grandchild. The petition further alleged that it would be to the interest of all the heirs to sell all the land. Answers filed by the adult heirs reasserted such alleged benefit. Before the amount of the indebtedness had been ascertained, and without an allegation as to its sum, the court decreed a sale of all the land owned by the decedent at her death. In the judgment of sale it was provided that so much of the purchase money as was going to the infants should not be collected, but was to remain a lien upon the land. The land was sold by the commissioner in two parcels, both to appellant

Elliott v. Fowler, &c.

Thomas H. Elliott, one for $6,700, the other for $4,701.94. Thus the land brought in the aggregate $11,401.94. The indebtedness against the estate, subsequently proved and allowed by the court, including costs of administration, was something over $7,000. The whole of the purchase money was collected under orders of the court. The infant's part of the purchase money having been squandered before it left the commissioner's hands, the guardian of the infant entered a motion in this action to require Elliott to pay to him for the infant the balance of the $700, and its interest from the date of the sale. Elliott responded to the motion by pleading that the sale of so much of the infant's land as was in excess of the amount necessary to pay the indebtedness of the intestate was void. There were other pleas, not necessary to here notice. The court below adjudged the whole of the remainder of the infant's interest a lien against Elliott's land, and he has appealed.

The proceedings were under section 489 of the Civil Code of Practice, which provides for the sale of an infant's estate in real property: First, for the payment of a debt or liability of its ancestor for which he may be legally charged upon, brought against him pursuant to section 428, which is the section of the Civil Code of Practice providing for the settlement of estates of deceased persons; second for the payment of a debt or liability of an infant in an action brought against him by his creditor; third, for maintenance and education of the ward in an action by his guardian; fourth, in an action for the maintenance of a lunatic and his family; fifth, in an action against an infant by his guardian for a sale of the estate and reinvestment in other property. It is manifest that this action was brought under the first subsection named

above, and did not involve in any wise any of the others;
for there is no averment anywhere in the case that could
bring it within any of the other provisions.    Nor was it
brought under section 490 of the Civil Code of Practice,
which provides for a sale of real property jointly owned
by two or more persons for a partition—First, when the
shares would be worth less than $100 each; or, second,
when the property is indivisible without materially im-
pairing its value.    On the contrary, the record shows
that the land was divisible without impairing the value of
any interest, and no effort was made, and it is not claimed
that the proceeding was, for a re-investment of the in-
fant's part, or that it was necessary for his support.
Were the judgment in this case and the sale thereunder
void?  The question with which we are thus confronted is
one of serious importance, whether viewed from the stand-
point of supreme care for the interests of the helpless, or
grave regard for the judgments of those courts upon
whose records depend so many of the titles to land in this
State.  We feel, though, that much of the perplexity in
which we would be involved as to which of the above-
named cardinal points was entitled to the most considera-
tion is resolved by the fact that this exact question has,
in one form or another, been frequently before the courts
and the Legislature, and has received, as its importance
would seem to insure, that thoughtful and conservative
attention due to it.    Because they are helpless from men-
tal and physical immaturity, and therefore their property,
the easiest possible prey to the covetous, in all times the
property rights of infants have had the peculiar and most
jealous care of the courts, both of law and equity, the for-
mer presenting an unyielding barrier to protect, the latter
the most exacting precaution to conserve and direct, their

uses.  Parliament alone could provide for the changing of the infant's real estate to personalty.  The power of courts of equity to sell an infant's real estate was unknown to the ancient common law.  It is not an inherent power attendant upon the chancellor's jurisdiction. Where it exists it is the creature solely of statute.

Vowles' Heirs v. Buckman, 6 Dana, 466; Henning v. Harrison, 13 Bush, 720; Walker v. Smyser's Ex'rs, 80 Ky., 620; (4 R. 662) Meddis v. Bull's Admr, 13 R. 767 (18 S. W., 6.)  Much concern has been manifested, in which some members of the court to some extent share, lest an adherence to the more stringent rule in behalf of the infant's interest should relax that other important tenet of the courts that treats as valid, till reversed or vacated in a direct proceeding for that purpose, every judgment of a court of general jurisdiction.  We can not be fairly misunderstood as in any wise relaxing the latter rule.  On the contrary, in its general application, we adhere to it.  Nor do we depart from it in this instance, as an exception new to the law. Courts of general jurisdiction frequently have conferred upon them special powers by the Legislature.  Of such the question has arisen in many jurisdictions, are the exercise of such special powers governed by the same general rule applicable to those matters within the general jurisdiction of the courts?  From an overwhelming array of authorities, with but few States opposing the doctrine, with two adopting a modified rule, Freeman thus tersely states the conclusion at which the courts have arrived:  "The jurisdiction exercised by courts of record is, in many cases, dependent upon special statutes conferring an authority in derogation of the common law, and specifying the manner in which such authority shall be employed.  The decided preponderance of adjudged cases up-

on the subject establishes the rule that judgments arising
from the exercise of this jurisdiction are to be regarded
in no other light, and supported by no other presumptions,
than though they originated in courts not of record.  The
particular state of facts necessary to confer jurisdiction
will not be presumed, and, if such facts do not appear, the
judgment will be treated as void."    Freem. Judgm. sec.
123.    The Kentucky decisions supporting this doctrine
are from the earliest history of this court, and are found
collected at page 49 of Newman's Pleading & Practice.  A
more recent publication, dedicated especially to the collec-
tion of authorities (12 Ency. Pl. & Prac., p. 176), confirms
the foregoing, with numerous citations, while volume 10,
p. 739, restates the same doctrine, with respect, especially,
to the sale of infants' real estate, thus:    "Where the
court ordering the sale of an infant's property derives its
power to make the order solely from statute, the provi-
sions of the statute must be strictly complied with, or the
sale will be void for want of jurisdiction to make the or-
der." Something like fifty decisions, many of which we ex-
amined, are cited as sustaining the text.    They are by
courts of last resort of the States of Florida, Illinois, In-
diana, Iowa, Louisiana, New York, North Carolina, Penn-
sylvania, Virginia, and in Mathewson v. Sprague, 1 Curt,
457, Fed. Cas., No. 9278.    To these must be added the de-
cisions of this court, more numerous, perhaps, than those
of any other, and which will be now noticed.

Our first notable decision involving this question is
Vowles' Heirs v. Buckman, 6 Dana, 466.    That was an
action of ejectment in which it was proved, on the part of
the plaintiffs, that their ancestor, Vowles, claimed under
several deeds, one of which emanated through a record of
the Nelson circuit court purporting to contain a history of

the petition and the proceedings thereon in the names of the heirs of Thos. Vowles, of whom seven are stated to have been infants, praying for a decree for the sale of the home plantation of their deceased father, and containing the report of a sale and conveyance of the same by a commissioner to the defendant under the order of the court. The question was, whether that record proved that plaintiffs' ancestor had been divested of title.   Said the court: "And this depends upon the conformity of the proceeding evidenced by the record with the statutory prescriptions which were attempted to be pursued.   For it needs neither argument nor authority to prove that the court had no right, except so far as it is specially authorized by statute, to make itself the instrument of transferring title to land, and especially the title of infants, upon an *ex parte* application, and merely in obedience to the will, or with a view to the interest, of owners.   And as the jurisdiction and authority of the court, in assuming such an instrumentality, is special and limited, it is obvious, upon well-settled principles, that, so far as the validity of the transfer attempted to be thus made depends upon the action of the court, it can only be sustained by showing that the case was within the special jurisdiction conferred upon the court, and that it had a right to act upon it." That proceeding was under the statute of 1813 (Morehead & B., Ky. St., 806), and the court held that it "must stand or fall by a comparison with the provisions of the statute," and that "the jurisdiction of the court does not attach, under the statute, unless the case is brought before it by the petition of the guardian of one or more of the infant heirs, stating that, in his opinion, the sale of their land will redound to their advantage, and supported by his affidavit of the truth of the facts set forth in the petition.

The propriety of this provision, and its importance to the safety of infants, require no comment. It is sufficient that the statute does not authorize the court to act under the petition of the infants, either by themselves or by any person who may choose to interfere in their affairs. . : . The statute does not authorize the court to sell the inheritance of an infant, whenever and because, it may deem, such sale advantageous to the infant." The court held the proceeding to be void in this collateral attack. In Singleton v. Cogar, 7 Dana, 479, a similar question was made of a proceeding had under the same statute. The court held: "The act of 1813 (Morehead & B., Ky. St., 806) confers on the circuit courts of this Commonwealth a special and limited jurisdiction to order the sale of real estate descended to infants, whenever, etc. In the case then before the court the record did not disclose that the estate therein sold had descended to the infants. The circuit court ruled that parol testimony to explain this latent defect in the record could not be introduced. This court. on the appeal, held that, under the peculiar character of this special proceeding, such testimony might be introduced where it did not contradict the record. Under the statute of 1813 only such estates of infants as had descended to them could be sold under decrees of circuit courts. The court in this case held: "Had the record of the petition and sale shown affirmatively that the infant had acquired his title by devise or other mode of purchase, the guardian and his alienee might have been concluded as to that fact; and the conveyance to Singleton would, in that event, have been, not only apparently, but conclusively, void, for an obvious and irremediable want of authority in the guardian to sell and of the circuit judge to sanction the sale of the land." In Barber's Adm'rs v.

Hopewell, 1 Metc., 262, which was a proceeding under chapter 86 of the Revised Statutes, a substantial re-enactment of the act of 1813, because the bond provided for in the second section of article 3 of the chapter was not executed, the court held the judgment .void.    This was followed in Megowan v. Way, 1 Metc., 424.   In Wells v. Cowherd's Heirs, 2 Metc., 514, and in Bell v. Clark, Id., 574, in each it was held that the judgment of sale of infants' real estate was void, because the commissioner failed to report, or failed to report in the manner and to report the facts, as required by the section of the statute conferring the jurisdiction upon circuit courts to decree such sales. Chapter 86, Rev. St.   This was followed in Mattingly's Heirs v. Read, 3 Metc., 524, 79 Am. Dec., 565.    In Carpenter v. Strother's Heirs, 16 B. Mon., 294, Barrett v. Churchill, 18 B. Mon., 390, and in Wyatt v. Mansfield's Heirs, Id, 780, sales of infants' real estate were held void in each of these cases because certain requirements of the special statutes regulating such proceedings were not complied with.    These cases were followed or cited with approval in Woodcock v. Bowman, 4 Metc., 40; Watts v. Pond, Id., 61.

A history of the statute law of this State on this subject may not be out of place in this point in the investigation. The act of March, 1791, provides that descended estates, held jointly by an infant or other person under disability and another, when the dividend of each shall not exceed the value of £30 in the opinion of any court mentioned in the act, it should be lawful for the high court of chancery, etc., to decree a sale.    Morehead & B., Ky. St., 290. The next act was the one approved February 3, 1813 (5 Litt. Ky. Laws, 57; Morehead & B., Ky. St., 806), the pre-

amble of which was:    "Whereas it is deemed politic and
just that infant heirs should be authorized by law to dis-
pose of the estate descended to them, in case where such
disposition will, in its immediate as well as ultimate conse-'
quences, redound to the benefit and advantage of such in-
fant heirs."    Then follow the provisions by which the
facts must be set forth in the application to the circuit
court, and providing for the appointment of commission-
ers, who were directed to report certain facts for the in-
formation of the court.    Following this was the provision
as to the manner of sale and requirement for bonds.    It
will be noticed that nowhere in this act is there a use of
the word "jurisdiction," nor is it provided anywhere in the
act that a failure upon the part of the court to do, or to
require, any of the things specifically named in the act,
shall render the judgment and proceedings thereunder
void.    In the cases of Vowles' Heirs v. Buckman, 6 Dana,
466, and Singleton v. Cogar, 7 Dana, 479, the court ex-
pressly held that, as the jurisdiction was a limited or
special one, the statutory requirements conferring it must
be strictly pursued, and, unless they were, the judgment
was void.    The court also held in Peyton's Heirs v. Al-
corn, 7 J. J. Marsh, 502, that the act should be strictly
construed.    This remained the law until the adoption of
chapter 86 of the Revised Statutes.    That chapter is en-
titled, "Sale of real estate and slaves of infants, etc."
Article 1 is a substantial re-enactment of the act of 1791
above referred to, which is substantially the same provi-
sion now found in our Civil Code of Practice (section 490,
subsec. 1).    Article 2 of that statute is also practically
re-enacted in subsection 2 of section 490 and sub-section 1
of section 492 of the present Civil Code of Practice.    Chap-
ter 86, art. 3, sec. 2, provides:    "Before a court shall

have jurisdiction to decree a sale of infants' lands (1) three commissioners must be appointed to report, and must report under oath to the court," etc.    "(2) Proof may be taken or required by the court, showing the propriety or expediency of such sale.    (3) The guardian of each infant, and the committee of each lunatic or idiot, whether a petitioner or a defendant, must enter into a covenant to the infant, or lunatic, or idiot, with good surety to be approved by the court, stipulating to faithfully discharge all his duties under this act under any order or decree of the court, and in pursuance thereof.    If the guardian or committee of an infant, idiot, or lunatic fails to give such covenant, the interest of such infant, idiot, or lunatic shall not be sold; any decree, sale or conveyance thereof shall be void."    In the revision of our Code of practice in 1877, substantially the same provisions are re-enacted in sections 489-495 of the Civil Code of Practice.

True, in the revision the words at the beginning of section 2 of chapter 86 of the Revised Statutes, viz.:    "Before a court shall have jurisdiction to decree a sale of infants' lands," are omitted.    These words prefaced the provisions concerning the appointment and report of the commissioners, the taking of proof showing the propriety of the sale, and the execution of the bond provided in sub-section 3, set out above.    It is argued that the omission from the revision of the clause quoted from section 2 of chapter 86 of the words just stated shows a legislative purpose to relax the stringency of requirements concerning such proceedings.    It must be assumed, though, that the Legislature had in mind, in framing the revision, such construction as this court had previously placed upon the statutes re-embodied in section 489, Civil Code Prac., etc.

Looking again to the numerous utterances of this court

construing these statutes, we find it had been declared expressly that the power conferred on the courts to sell infants' real estate was a special and limited jurisdiction (Vowles' Heirs v. Buckman, supra; Singleton v. Cogar, supra), and that all requirements of the statute necessary to conferring jurisdiction must, under familiar rules of construction, be strictly pursued, or the sale would be void (Vowles' Heirs v. Buckman, supra), though it seems that later cases seem to regard immaterial deviations in matter of proceeding, independent of jurisdictional facts, merely rendered the judgment voidable, but the non-observance or nonexistence of jurisdictional prerequisites vitiated the proceeding from the beginning (Singleton v. Cogar, supra; Megowan v. Way, 1 Metc., 424; Wells v. Cowherd's Heirs, supra; Bell v. Clark, supra; Mattingly's Heirs v. Read, supra; Barrett v. Churchill, supra; Wyatt v. Mansfield's Heirs; and other cases cited above). These cases were followed by Gill v. Givin's Adm'r, 4 Metc., 197, a case identically in point with the one at bar. In that suit to settle a decedent's estate, brought under a section of the Civil Code of Practice substantially the same as section 428, infant heirs were joined as defendants. The decedent's debts were $597.13. His lands sold for $1,775. The commissioner reported that, in his opinion, it would be to the interest of all parties to sell the whole tract together. The purchaser, being ruled to pay the bonds, resisted on the ground that the sale of land in excess of the decedent's indebtedness was void. The court held: "The pleadings show that a sale of the whole tract was not necessary to pay the decedent's debts. The court had no jurisdiction to order a sale of more than was necessary for the purpose. The judgment, therefore, ordering a sale of the whole tract was void."

However, the codifiers encountered, after the case last cited, another opinion of this court (the dictum in which seems to be responsible for some of the utterances in Lee v. Page, 12 Bush, 202), and at apparent variance with all the others above enumerated. We refer to the case of Thornton v. McGrath, 1 Duv., 350, opinion by Judge Robertson. The eminent services of this distinguished jurist are held in such high esteem by this court, and by the profession generally, that we would hesitate to question what he has said on behalf of the court. But a careful examination of that opinion will disclose that it is not really opposed to the current of this court's decisions on this question. It was delivered in 1864. The facts involved were: A city lot owned by infants was, in 1854, sold by the circuit court, on the petition of the guardian of the infants. The lot had descended to them from their father. The purchasers at the sale, having paid part, resisted the payment of the balance of their bids, and brought suit for a restitution of the part paid, because, in the language of the opinion, "on the alleged ground that, for some unspecified, nonprecise conformity to the statute authorizing such sales, the sale as made, was void." Before that proceeding by the purchasers, "a petition had been filed in the same court seeking a confirmation of the sale under the authority of the amendatory acts of 1861-63." Those two suits were tried together, the circuit court confirming the sale. This was resisted by the purchasers, who assumed the judgment to be void, on the grounds that the special acts under which the last suit was brought were unconstitutional, as impairing the obligation of a contract, and as devesting vested rights. The acts in question were two acts of the Assembly of 1861-62, specially authorizing suits to be brought to sup-

ply defects in proceedings to sell infants' lands, thereby to validate such sales as had been made, and which, but for such curative proceedings, would have been void.    It would seem that the only question necessarily presented was, whether the curative statutes (Acts 1861-63, pp. 7, 64) were unconstitutional.    For, if they were not, they cured, and thereby settled, all other questions.    The court decided, and was clearly sustained by authority in doing so, that the special statutes were not unconstitutional.    But concerning the validity of the original sale, the court said: "The statute law of Kentucky authorizing such sales for the benefit of infants has been construed with a peculiar strictness by this court.    Whether a more liberal construction would have accorded more with the legislative purpose, and have been more subservient to the interests of infants, it is too late now for the court to consider. The decisions hitherto rendered have been apparently acquiesced in by the legislative department, and therefore, right or wrong, they must be held by the judiciary as the law of the land.    The statute provides that no court shall "have jurisdiction" to decree the sale, unless commissioners, appointed for that purpose, shall have reported certain facts, and unless, also, the guardian shall have executed a prescribed bond to all the infants; and one of the sections provides, that unless bond be given as required, the decree and sale shall be "void."    The statute, failing to declare the decree of sale void for any other cause than the nonexecution of the bond, might authorize the presumption that, for any other nonconformity, it intended that they should be erroneous or voidable only, and that, by the words "no jurisdiction to decree a sale," the statute contemplated only a denial of authority rightfully to decree a sale by a court, although it had undoubted juris-

diction of the case and over the parties and subject-matter."

From the foregoing and other dicta it is by some argued that, where the courts and Legislature have been saying "void," they meant "voidable" only. It must be noted, though, that the opinion further says that the former opinions of the court holding such proceedings void used that term as the equivalent of voidable. No decision is named in the opinion, and none of those cited in this opinion save Barber's Adm'rs v. Hopewell, 1 Metc., 262, Wells v. Cowherd's heirs, 2 Metc., 514, and Wyatt v. Mansfield's Heirs, 18 B. Mon., 780, were cited on the briefs of counsel. His own strong opinion, in Singleton v. Cogar, supra, delivered in 1838, to the contrary, not to mention the numerous other cases above named, opposing this statement, could not have been in the judge's mind. Besides, the language used by the General Assembly, at the close of subsection 3 of section 2 of chapter 86, quoted above, was as positive as that used in the opinions of this court. The court, then, seems to have decided that the original sale was not shown to be void, because of the silence of the record on certain points. But they were unwilling to rest their opinion on any such conclusions, for they then said: "If, as we are inclined to think, the sale was not void, in any of the senses of that word, that would end this controversy. But, not being perfectly satisfied with that as a judicial conclusion, we will now proceed to notice the two objections made here to the chancellor's decree of confirmation." Then the court held that the special acts before mentioned cured any defects in the original sale. The codifiers of the law on the subject of the sale of infants' lands, therefore, were met with what appeared to be an utterance of this court to the effect that by the use of the

words "before any court shall have jurisdiction," etc.,
that would seem to argue that the Legislature meant that
for neglect of other matters required by the proceeding
sections of the act the sales would not be void. So, evi-
dently bearing in mind the earlier decisions of this court,
they omitted that objectionable and misleading phrase in
the reenactment. They were further met with the sug-
gestion in the opinion that "void" meant "voidable."
Therefore, in the reenactment of that particular section,
they used this apparent tautology: "If the bond be not
given, any order of sale, and any sale thereunder, shall
be absolutely void and of no effect." This action, to our
minds, evinced clearly a legislative determination to ad-
here to the original construction applied by this court to
this act, as to the existence of jurisdictional facts named
in the statute, and the absolute necessity of the bond call-
ed for. In Thornton v. McGrath what the court did decide
was that it did not appear to the entire satisfaction of the
court whether the original sale, in 1854 was void, but that
the amendatory acts of 1861-63, and the proceedings there-
under, cured such defect, latent or real; that the statute
laws of this State authorizing such sales for the benefit of
infants "have been construed with a peculiar strictness by
this court," and that it was too late for the court to then
consider whether a more liberal construction would have
been better; that such decisions have been apparently ac-
quiesced in by the legislative department, and, right or
wrong, must be held by the judiciary to be the law of the
land. What the court did not decide, but what the writer
of the opinion intimated, was that "void" as used in the
statute and opinions was the equivalent of "voidable."
It did not decide that the original sale was not void or
voidable. The opinion suggested that the use of the words

relative to jurisdiction and the requiring of a certain bond, but for which the proceeding should be void, "might authorize the presumption that, for any other nonconformity," the proceeding should be merely erroneous or voidable.  These two intimations doubtless led to the amended features of the act now in force.

The construction to be placed on these sections of the statute, as affecting sales of infants' real estate, has not been had since the adoption of the Civil Code of Practice in its present form.  We deem it of importance scarcely less than the correct solution of the main question that the conclusion reached now may be regarded by the profession, and those having occasion to investigate the subject, as decisive of the question.  To do so it may be necessary to consider a number of other decisions of this court, in which the principles here involved appear to have been at least collaterally under consideration, but none of which, in our opinion, are in conflict with the conclusion we announce.  Robinson v. Redman, 2 Duv., 82, was a proceeding under section 543 of Myer's Code for the sale of city or town lots "held by, or in trust for, co-parceners, joint tenants, or tenants in common, when a division would materially impair the value."  The court distinguished this proceeding from those under chapter 86 of the Revised Statutes, above discussed, and the court held that after a jurisdiction had attached, as was shown to have been done in that case, a failure to comply with some requirement of practice, such as the appointment of a guardian *ad litem* for the infants, would not render the judgment void, but merely erroneous.  In that case it further appeared that a sale of the lots was necessary in order to pay specific legacies and debts of the testator, and that the court of equity decreeing the sale took jurisdiction of

the property and persons interested for these purposes. Lee v. Page, 12 Bush, 202, opinion by Chief Justice Peters, was a proceeding evidently under chapter 86 of the statute.

Two grounds were relied upon in that case as holding the judgment of sale void—First, that the commissioners appointed by the court had not reported whether the interest of the infant or idiot required the sale to be made; second, that the bond executed was not as required by the statute. The court found that the report of the commissioners was a substantial compliance with the statute, but that, whether it was or not, it was not such an informality as would render the judgment void; but the court found that the bond had been executed substantially as required by the statute, and was sufficient for every practical purpose of the law. The court, however, rested its decision finally upon the other and distinct grounds, which, in our opinion, were sufficient. It held that the land had been sold for a full, fair price, that the purchase price had been turned over to the guardian of the infants, and subsequently accounted for by him to them and their husbands upon their arriving at age, and that, therefore, an estoppel was worked upon them, and that it would not be equitable to allow them to reclaim the land, under the circumstances, without returning the purchase price, allowing for an accounting of rents, interest, improvements, wastes, etc., though the court held, or at least so strongly intimated that we understand it to have so held, that, by making such tender and allowing such an accounting, the judgment would be vacated, even in that collateral proceeding. In Revill's Heirs v. Claxon's Heirs, 12 Bush, 558, the principal question was whether the failure to incorporate the names of the infants in the caption of the peti-

Elliott v. Fowler, &c.

tion was such a defect as vitiated the sale. The court held that, their names having been stated in the body of the petition, and the proceedings being otherwise regular, there was a substantial and sufficient compliance with the strict terms of the law. The court distinguished that case from Wyatt v. Mansfield's Heirs and Barber's Adm'rs v. Hopewell, supra. Bronston v. Davidson, 4 Ky. Law Rep., 56, is only an abstract of an opinion. The facts not being shown, we can not presume it to be in conflict with the reported cases in this State. Spencer v. Milliken, 4 Ky. Law Rep., 856, involved two lots owned by infants, one of which was sold for debts of the ancestor, and the other sold in proceeding against the widow and infant under the provisions of the testator's will devising the lot, requiring it to be sold for their support. The court found that it had been sold, and the proceeds so used, and that the court, having taken jurisdiction of the subject-matter, and jurisdiction having been clearly conferred, the record showing that the state of facts contemplated by the will had arisen, and the petition stated a good cause of action, all parties in interest made defendants and process issued, but not served in time, and the property sold for its full value, the rendering of the judgment prematurely did not make the sale void,—it was merely erroneous; and that, the infant having suffered five years to elapse after arriving at twenty-one years of age, was bound by the judgment. This court has frequently held that the rendering of a judgment before the action stood for trial was merely a clerical misprision. Johnson v. McDyer (11 R. 29) 9 S. W., 778, was an action to sell the land of a decedent to pay his debts. The record of the action was lost. Many years afterwards, in a collateral attack upon the proceedings, the court held that it

would presume, in the absence of the record, that necessary jurisdictional steps had been observed. To the same effect, exactly, was McNew v. Martin (22 R. 1275) 60 S. W., 412, and Jones v. Edwards. 78 Ky., 7.

After all, besides the general doctrine constituting the practice of enlightened tribunals in so many other jurisdictions, and admitting that we were quite free to ignore the judicial and legislative construction so long applied in this State, why should we adopt a different rule? It is said innocent purchasers at these sales, or innocent purchasers subsequent to the sales, may be injured, may sustain loss, if this rule is adhered to. That can not be, though, except the parties to the proceeding have shown, and the court had suffered, such a palpable departure from their plain statutory duty as would result in loss to the infant unless this rule stands. It, then, is the question, which should suffer, if either must,—the infant whose utter helplessness makes it impossible for him to know, much less to prevent, the wrongful act, or the adult purchaser, whose ripened judgment and experience and sense of caution, prompted by self interest, all make it his duty, as it is his opportunity, to look and to know, before he parts with his money, whether these plain statutory requirements have been performed? Shall such a negligent one, to save himself from loss, which could not have been but for such negligence, be permitted to say to the babe robbed of his patrimony, "I am the innocent one?" Or, it may be said, it is the sanctity of the judgments of the courts—their stability—that must be upheld. Are the judgments that were made for property rights of more importance than the property rights for which they were made? It is not sound public policy that would tempt perfidy in dealing with infants' estates, or at best condone their neglect by those

intrusted with them, and put a premium upon carelessness. That course is better that admonishes alike guardians and purchasers that, before they can divest the infant of his land, they must look carefully, under pain of loss, to a strict compliance with the law. The Legislature has provided the manner, and for what purposes alone, an infant's land may be sold. It had the undoubted right to so provide, or even to withhold altogether such right of sale.

What sufficient reason could be urged upon us to justify our allowing the infant's title to be passed for a different purpose, or in a different manner, than the lawmaking body of the State has seen fit to provide? We can conceive of none. We therefore hold that, when the proceedings show that the statutory ground or necessity for selling the infant's lands do not exist, or where the bond required by the Civil Code of Practice (section 493), has not been executed, the judgment and sale are void. The infant loses no rights under them, and the purchaser takes none. Lest confusion may arise in some minds as to the extent of this ruling, we also reaffirm what was said in Gill v. Givin's Adm'r, supra, viz.: "It may be proper to add, in reply to a suggestion of counsel, that, in our opinion, it does not necessarily follow from what we have said that an order for the sale of so much of the real estate descended or devised to an infant as might be necessary to pay a certain sum adjudged to be due the decedent's creditors would be void if erroneous as to the sum adjudged to be due." (Page 199.) We may also add, where the lot or land sought to be sold is indivisible without impairment of its value, the Code furnishes ample and exclusive provision for proceedings to sell it as an entirety. Where the lot is indivisible, and some part of it is necessary to pay the ancestor's debts, as said in Gill v. Givin's Adm'r (page 198),

the provisions of the Code as to suits to settle decedents' estates, and those provisions applicable to the sale of infants' lands under circumstances of indivisibility, must be read and applied together. It follows that the judgment of sale, and the sale of the infant's land in this case in excess of the indebtedness of the decedent, were void. The judgment enforcing the rule is reversed, and cause remanded for proceedings consistent herewith.

Dissenting opinion of Judge Hobson:

This case involves the construction of the provision of section 429 of the Code of Practice, that, in actions to settle decedents' estates, when the personalty is insufficient for the payment of the debts, "the court may order the real property descended or devised to the heirs or devisees, who may be parties to the action, or so much thereof as shall be necessary, to be sold for the payment of the residue of such debts." The question is, upon what basis is it to be determined how much land it is necessary to sell for the payment of the debts? When the land is divisible, and enough of it may be sold to pay the debts without impairing the value of the part sold or that remaining, the court shall order a sale of so much land as will pay the debts. But, if the property is indivisible, as in the case of a town lot occupied by a valuable building, then the whole must be sold, although bringing much more than the amount of the debt. The power of the chancellor to sell more land than required to pay the debts would not stop here; because it is his duty to protect, not to sacrifice, the interest of the heirs at law; and, where the property is divisible, but when much more valuable when sold together than if separated, he would have the power to sell the whole rather than inflict a loss on the heirs, although

some of them were infants.    The statute was not intended to place the chancellor in the narrow limits of Shylock's bond, with power to cut just one pound nearest the heart, and not more or less "in the estimation of a hair."    He may decree the sale of more land than required to pay the debts when, in the exercise of a sound judgment, this is proper, in view of the interest of all parties concerned.    In settling the estate of deceased persons, the circuit courts of the State are not of special or limited jurisdiction, but possess broad discretionary powers, as in the settlement of other trusts, to do full justice to all concerned.

In making a sale under this section, where, for illustration, the debts are $5,000, and the land is worth $10,000, and two-thirds of it may be sold for $5,000, the chancellor is not required to order a sale of two-thirds when the other third will only be worth $2,500.    The word "necessary" is not to be strictly construed, but liberally, with a view to promote the purposes of the section.    Its object was to provide for the payment of the decedent's debt without unnecessary sacrifice of the interests of the heirs, and for this reason the power to settle the estate was vested in the chancellor exercising his usual equity jurisdiction, as in the settlement of other trusts.    In this case it was averred that the debts were considerable, that a sale of a part of the land was necessary, and that it would be to the interest of the heirs for all the land to be sold.    Each of the adult heirs filed an answer, in which they admitted this to be true, and joined in the prayer of the petition for a sale of all the land.    The statutory guardian of one of the infant defendants filed a similar answer.    The guardian *ad litem* for the other infant, who had no statutory guardian, filed a report, stating that he had examined the record, had no defense to make, and knew no reason why the prayer of the

petition should not be granted.   The judgment of the court
recites the allegations of the pleadings and orders a sale
of the whole land, but directs the commissioner not to
collect or take bond for the share of the infant Davis Tuck,
who had no statutory guardian, but to ascertain the
amount due him, the same to remain a lien on the land.
Whether the allegations of the pleading were sufficient to
warrant the court in entering the judgment is a question
not now presented.   The court had the right to order a
sale of the entire tract under certain circumstances.
Whether the allegations of the pleadings were sufficient to
present a state of case under which a sale of all the land
should be ordered, or only a part of it, was a question that
the court had then to determine.   In determining this
question, he did not act as a court of special or limited
jurisdiction, but in the exercise of his ordinary powers as
chancellor in the settlement of trust estates.   He had the
same power as in other trusts, and was not under the
penalty that if he departed a hair's breadth from the let-
ter of the law, under the pleadings, his judgment was void.
No principle is better settled than that defective allega-
tions do not make a judgment void, where the court has
jurisdiction of the parties and the subject-matter.   This
precise question was fully considered and settled recently
in  Kimbrough  v.  Harbett  (22  R.  1578)  110  Ky., 94
(60  S.  W.,  836,)  and  Bitzer  v.  Mercke  (23  R.  670)
111 Ky., 297 (63 S. W., 771.)   In those cases a number of
authorities are referred to.   If, in addition to the aver-
ments of the pleadings in this case, it had been averred
that a sale of enough of the land to pay the debts would
leave less to the heirs than a sale of the whole, and that
what would be left would be indivisible between them with-
out materially impairing their interest, there is enough in
the record to raise the presumption of the truth of the

averments; for, though it may be presumed that the land was divisible, so that part of it might be sold for the payment of the debts, it can not be presumed that what would then be left would be divisible between all the heirs. So the case comes to this: The chancellor, presumptively, had full power to do all he did, but there was a failure of the pleader to set out the facts as fully as he should have done. The opinion of the court ignores the distinction between a want of jurisdiction over the case and a want of power to do the act complained of. If the court has jurisdiction over the case, and grants relief which he has no power to grant under the pleading, the judgment is illegal. It is a case of illegal exercise of power, but the judgment is not void. Thus, by section 694, Civ. Code Prac., no sale can be ordered in certain contingencies, and by section 696 realty can not be sold upon less credit than six months; but a sale in violation of these provisions is only voidable, and not void. The land in the hands of the heirs was assets in equity for the payment of the debts of the decedent. These assets the creditors themselves might have subjected by a proceeding in equity. The statute authorized the executor, as trustee for them, to bring the action in equity for the settlement of the estate and the payment of the debts. It was nothing more than an action by a trustee, charged with a trust, for the execution of that trust. The chancellor, sitting as a court of conscience, might compel the defendants to do that which they ought to have done, but which the infants were unable to do by reason of their incapacity. In executing this trust it was his duty to save the rights of all the parties, so far as practicable, and to make an order for the sale of the land in such a way as to injure the defendants as little

as possible.   He had jurisdiction of the subject-matter and of the parties, and, if he erred as to the sufficiency of the pleadings or proof, or acted prematurely, his judgment stands just as if it had been rendered in any other action for the settlement of a trust in a court of equity, and, however erroneous it may be, it is not void.   Gill v. Givin's Adm'r, 61 Ky., 197, is rested by the court on the wording of the statute then in force.   The judgment may have been right if the sale was only voidable, and not absolutely void. Lee v. Page, 12 Bush, 202.   The court said it was void, but in the subsequent case of Thornton v. McGrath, 62 Ky., 251, the court held that the word "void," as used in reference to such sales, meant voidable.   The statute under which Gill v. Givin's Adm'r, was decided is no longer in force, and, even as to infants' land, the present statutes provide that if a certain bond is not given the sale shall be "absolutely void and of no effect."   This clearly implies that the sale is not to be absolutely void for other irregularities, for the one exception by the statute is the exclusion of others.   Civ. Code Prac., sec. 493, subsec. 3.

None of the other cases cited arose in suits to settle decedents' estates, and all of them were decided before the adoption of the present Civil Code of Practice, which was clearly intended to modify the rigor of the former rule. It is a noteworthy fact that since the decision of Thornton v. McGrath, in February, 1864, no sale of infants' land has been adjudged void. In Walker v. Smyser's Ex'rs, 80 Ky., 620 (4 R. 662) an earnest effort was made to get the court to adjudge the sale void; but the court upheld the sale, under the general power of the court of chancery to execute a trust.   In Robinson v. Redman, 63 Ky., 82, it was held, following Thornton v. McGrath, that the provisions of the statute are merely directory to the court, and their nonob-

servance is error merely, "for which an'aggrieved party to the judgment might reverse; yet, the court having jurisdiction, its judgment is not void because of these errors, but is binding until reversed." In Lee v. Page, 12 Bush, 202, the authorities are reviewed, and the holding in Thornton v. McGrath, that such sales are voidable and not void, was approved. This case was followed in Revill's Heirs v. Claxon's Heirs, 12 Bush, 558, where the court said: "But, the sale having been made and reported, the court had jurisdiction to decide whether it had been made according to law, and the confirmation of the report was a decision that the sale had been so made; and, however erroneous that decision may have been, the judgment of confirmation was not void. Dawson v. Litsey, 10 Bush, 408."

In Henning v. Harrison, 13 Bush, 723, the doctrine of these cases was adhered to, and it was said: "It is only when the required bond is not given that the judgment is void." The same conclusion was announced in Kendall v. Briggs, 81 Ky., 123. (4 R. 854). In Spencer v. Milliken, 4 Ky. Law Rep., 856; Bronston v. Davidson, Id., 56; Johnson v. McDyer (11 R. 29) 9 S. W., 778; McNew v. Martin (22 R. 1175) 60 S. W., 412, —the above decisions were recognized. The rule laid down in the latter decisions has evidently been acted upon and acquiesced in by the Legislature in the adoption of the present statute, and, even if this was regarded a sale of infants' land under these statutes, the sale would be voidable, and not void, however erroneous the judgment may have been. It has been the settled policy of this State to uphold judicial sales. Many titles have been made and large amounts of money have been invested on the faith of the decisions above referred to. It seems to be unwise and unwarranted for this court to depart from them after they have been recognized as the law of the State for

more than a third of a century. The infant has the right of appeal until one year after his majority, and thereby any injustice that may have been done him may ordinarily be corrected. This has been supposed to be sufficient to protect his interest, and I see no reason now for departing from a rule of property so long recognized. I therefore dissent from the opinion.

Chief Justice Paynter and Judge Guffy concur in this dissent.