### Pierce v. Marrs, et al.

### Damron, by, et al. v. Marrs.

(Decided May 15, 1913).

#### Appeals from Pike Circuit Court.

1. Parties—Capacity to Sue—Misdescription of Capacity—Effect.— Where the estate of a decedent is committed to the sheriff pursuant to section 3907, Kentucky Statutes, the fact that he brought an action pursuant to sections 428 and 429 of the Civil Code,

under the title of curator of the estate of the decedent, does not render the proceedings erroneous where, upon the sustaining of a spcial demurrer, he correctly sets forth his true capacity in which the suit is brought.

2. Infants—Real Estate—Sale.—Where, in an action brought pursuant to sections 428 and 429 of the Civil Code to settle the estate of a decedent and to sell real estate for the payment of decedent's debts, the petition alleges that the decedent left no personal property, and the whole record fairly construed leaves no doubt that this is true, and it is not even claimed that the decedent did leave personal property, the sale is not erroneous as to the infants because no direct proof on this question was taken.

3. Infants—Real Estate—Proof of Indivisibility.—Where property descending to infants is sought to be sold in a proceeding to settle a decedent's estate, and the pleadings and other parts of the record make it clear that the land is indivisible, and the land does not bring enough to pay the debts, the fact that no proof was taken on the question of indivisibility does not render the sale erroneous.

4. Specific Performance—Real Estate.—Where a purchaser resists specific performance on the ground that the proceedings in a judicial sale whereby the plaintiff acquired title were invalid, it is proper, upon the holding of such proceedings to be valid, to decree specific performance.

YORK & JOHNSON for appellant, E. F. Pierce.

STRATTON & STEPHENSON for appellants and appellees, Frank, Edgar and H. S. Damron.

ROBERSON, LANGLEY & COOPER and HAZELRIGG & HAZELRIGG for appellees, J. P. Marrs and Alice M. Marrs.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

These two appeals will be considered together.

On April 1, 1911, J. P. Marrs and Alice M. Marrs, his wife, entered into a written contract with E. F. Pierce whereby they sold and agreed to convey to him an undivided one-seventh interest in and to a certain tract of land in Pike County, on the waters of Robinson Creek. The consideration was $25 per acre, to be paid within two months from the date of the contract. The sum of $50 cash in hand was paid. Pierce refused to comply with the terms of the contract, and on July 15, 1911, Marrs and wife brought this action for specific performance, at the same time tendering a deed in conformity with the contract. Pierce defended on the ground that plaintiff's title to the land was defective, and also alleged that Frank Damron and Edgar Damron, infants, claimed to

be the owners of the land in question, and asked that they be made parties to the action and required to set up any claim of title they had to the land. Thereupon, the two Damron infants and H. S. Damron, their father and guardian, filed an answer to the cross-petition against them, in which they alleged that J. P. Marrs and Alice Marrs had no title to the property, but that they themselves were the owners thereof. To this answer Marrs and wife filed a reply, denying the ownership of the infant defendants and pleading the proceedings and judgment in the case of W. J. Keel, Curator, v. H. S. Damron, et al. in bar of their right to recover. The record in the case of W. J. Keel, Curator, v. H. S. Damron, et al. was filed. On final hearing the chancellor adjudged that the infants had no interest in the land in question and decreed specific performance. From that judgment the first appeal mentioned in the caption is prosecuted.

The second appeal mentioned in the caption is prosecuted by the infants, Frank and Edgar Damron, from a judgment of sale rendered in the case of W. J. Keel, Curator, v. H. S. Damron, et al. As the validity of the judgment of specific performance depends upon the regularity of the proceedings in the latter case, it will be necessary to set out those proceedings at length. The action was instituted by W. J. Keel, curator of the estate of Fannie Damron, v. H. S. Damron, Frank Damron, Edgar Damron, and the Bank of Pikeville. The petition alleges that in the year 1898 Fannie Damron died intestate, domiciled in Pike County, and at the March term, 1899, of the Pike County Court the estate of Fannie Damron was, by proper orders of said court, committed to the hands of W. J. Keel, Curator, who accepted said appointment and entered upon the discharge of his duties as such. It further appears from the petition that Fannie Damron left surviving her her husband, H. S. Damron, and two children, Frank Damron and Edgar Damron, who were infants under fourteen years of age, and resided with their father, H. S. Damron. It also appears that Fannie Damron at the time of her death owed two notes, one for $270.41, the other for $492.34, which had been assigned to and were owned by the Bank of Pikeville. The petition alleges that Fannie Damron left no personal estate or property, but that she died seized of a house and lot in the town of Pikeville, and also owned an interest in a certain boundary of land described in a deed from Thomas May, Sr., to Mary E.

May, dated February 13, 1877. The petition concluded with a prayer that the case be referred to the master commissioner to report the amount and character of any and all debts against the estate, to make a full and complete report and description of all lands and interest in lands owned by the decedent, to settle the accounts of plaintiff as curator, to make proper allowances to the plaintiff and his attorneys, and further asked that a sufficiency of the lands be sold to pay all costs and debts. Upon this petition process was issued against H. S. Damron and the infant defendants, Frank Damron and Edgar Damron, and the Bank of Pikeville. Summons was executed on the infant defendants by delivering a copy for each of them to their father, H. S. Damron. An order was entered referring the case to the master commissioner and directing him to audit and report all debts and demands against the estate and to report and file a. full list and description of all lands and interest in lands owned by Fannie Damron at the time of her death. An affidavit was filed to the effect that the defendants, Frank Damron and Edgar Damron, were infants under the ages of fourteen years, and that neither of them had any guardian, curator or committee in the State known to the plaintiff and affiant, and that they had each been served with summons as provided by law. Thereupon, · N. J. Auxier, a regular practicing attorney, was appointed guardian *ad litem* for the infant defendants, and he thereupon filed a general and special demurrer to the petition. The special demurrer was sustained. Plaintiff, W. J. Keel, then amended his original petition and alleged that at .the regular November election, 1897, he was duly elected sheriff of Pike County, and on the first Monday in January thereafter qualified as such and was then acting; that by reason of the fact that Fannie Damron had been dead for more than three months and no one had qualified or offered to qualify as her personal representative, her estate was duly ordered into his hands by virtue of his being the sheriff aforesaid, and he thereupon accepted said appointment .and entered. upon the discharge of his duties as such. The master commissioner filed a report of decedent's indebtedness, showing the total amount to be $849.48. The report also showed that decedent owned a house and lot in the town of Pikeville, and an undivided one-seventh interest in and to a tract of land on Robinson Creek, and an undivided one-seventh interest in a tract of land on Grassy Creek. The report

recites that this is all the land Fannie Damron died seized of. The claims of the Bank of Pikeville were properly proven before the commissioner. Later on in the proceedings an amended petition was filed alleging that H. S. Damron, husband of decedent, had executed the two notes above referred to and was jointly liable on each. The amended petition also alleged that these notes were secured by a vendor's lien on the house and lot in Pikeville. The guardian ad litem filed a report to the effect that he had carefully examined the papers in the case and was unable to make any defense on behalf of the infant defendants. The Bank of Pikeville was adjudged a vendor's lien on the house and lot in Pikeville and the house and lot was ordered to be sold. The house and lot was sold on April 24, 1900, at the price of $300. On May 10, 1900, H. S. Damron filed for himself and the infant defendants an answer pleading a homestead in the tract of land in which Fannie Damron owed an undivided one-seventh interest. Thereafter the court entered judgment to the effect that H. S. Damron and his infant children were entitled to the use and occupancy of the land in question until the youngest child reached twenty-one years of age. As the house and lot in Pikeville did not bring enough to pay the debt to the Bank of Pikeville, the undivided one-seventh interest in the tract of land on Robinson Creek was ordered to be sold, subject to the aforesaid use and occupancy by the infant defendants. This property was sold at the price of $306.50 to the Bank of Pikeville. No exceptions having been filed, the report of sale was confirmed. Thereafter the Bank of Pikeville sold and transferred its bid to J. P. and Alice Marrs and the court directed the deed to be made to them. The deed was produced and approved by the court and certified to the county court clerk's office for record.

No question is raised as to the sale of the house and lot in Pikeville. The validity of the sale of the undivided one-seventh interest in the tract of land on Robinson Creek is the only question involved. The proceedings are not erroneous because the action was originally brought by W. J. Keel as curator. On this account a special demurrer was sustained to the petition; thereupon he amended and showed that the estate had, as a matter of fact, been committed into his hands as sheriff, pursuant to section 3907, Kentucky Statutes. Having the right to prosecute the action in question, and having by his amended petition correctly set forth the capacity in

which he thereafter prosecuted the action, the fact that in the original petition he misdescribed the capacity in which he brought the suit is in no way prejudicial to the substantial rights of the infants.

It is next insisted that the sale is invalid because there was no proof of the fact that the decedent left no personal estate, and no proof of indivisibility. The petition itself shows that the decedent left no personal property. Had there been personal property, it would have been in the possession of plaintiff as sheriff. The suit was brought not only for the purpose of selling the real estate to pay decedent's debts, but also to settle the accounts of the plaintiff as administrator. We conclude that the whole record, fairly construed, leaves no doubt that the decedent left no personal estate. Indeed, it is not now contended that she did. Under the circumstances, therefore, we conclude that the sale of the real estate was proper. Nor is the judgment erroneous because of no proof as to the indivisibility of the second tract sold. The judgment first directed a sale of the house and lot. The proceeds were insufficient to pay the debts. The other tract consisted of about 800 acres, and the decedent died owning a one-seventh undivided interest therein. Further division between the two infants would have divided it into fourteenths. The pleadings and the report of the commissioner show this latter tract to be indivisible. As a matter of fact, the land did not bring enough to pay the balance of the debt. Under these circumstances we cannot say that the sale was erroneous. If, as a matter of fact, the undivided one-seventh had brought more than enough to pay the debt and costs, without proof showing the necessity of the sale and without steps being taken to protect the proceeds going to the infants, a different question would be presented. Elliott v. Fowler, 112 Ky., 376; Oldham v. McElroy, Sheriff, 134 Ky., 454, 121 S. W., 414.

It is next urged that the judgment awarding H. S. Damron, the father of the infants, a homestead in the land until the youngest child became of age is erroneous. It is sufficient to say that H. S. Damron prosecuted no appeal from the judgment within the time prescribed by law, and whether erroneous or not, he is concluded by it. Upon the whole case we find no error in the record prejudicial to the substantial rights of appellant.

Having held the proceedings in the case of W. J. Keel, &c. v. H. S. Damron, &c., valid and sufficient to vest in

J. P. Marrs and wife the legal title to the property in question, it follows the specific performance was properly decreed.

The judgment in each case is affirmed.