Walker, &c., v. Smyser's ex'rs, &c.

CASE 114—EQUITY—DECEMBER 16, 1882.

THIS OPINION WAS SUSPENDED BY A PETITION FOR A
REHEARING.

# Walker, &c., v. Smyser's ex'rs, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. It is well settled that the powers of courts of equity in this state to sell and reinvest infant's real estate are not inherent, but statutory.

2. The chancellor could not legally compel the trustee to exercise the power provided for in the deed, if it were a mere naked power or a power coupled with a trust, if the refusal of the trustee was a *bona fide* exercise of the discretion conferred upon him.

3. But where a trustee invested with a power, coupled with an express trust, is proceeding to pervert the trust, or refuses, without excuse, to execute his power, the chancellor's authority to compel him to discharge his duties is unrestricted.

4. There is no distinction between a sale made by a trustee and a sale made by the chancellor under a state of fact which shows that the trustee was willfully refusing to perform his duty by declining to exercise the power conferred upon him.

5. The deed gave the trustee power to sell the land upon the written request of the beneficiary for life, provided he deemed a sale to be for her interest, and provided further, that he might require that the beneficiary should file her petition in chancery praying for the sale before he would make it. He had no right to refuse to make the sale while he admitted that it was actually necessary, and that the written request had been made. But the petition having been filed, equity has jurisdiction to decree the sale, not under the clause of the deed referred to, but under the power of the chancellor to coerce a trustee who refuses to act in the discharge of his duty.

6. The omission to make the remaindermen parties did not render the sale void.

7. The court should have permitted the guardian of appellants, Charles and Elizabeth Walker, to file the answer and counter-claim tendered by him, and should have permitted him to perfect it by amendments, and to control the defense and cross-action for his wards.

W. P. D. BUSH, D. B. SANDERS, P. B. MUIR, AND D. J. HEYMAN
FOR APPELLANTS.

1. In a proceeding in a court to sell for reinvestment land held in trust for the separate use and benefit of a married woman during her life, with remainder over to her children, the children *in esse* at the time of such proceedings are necessary parties thereto.

2. A sale of such trust land for reinvestment by the Louisville chancery court, on the petition of the life tenant and her husband, against the trustee and life tenant as defendants, to which the infant remaindermen were not made parties, did not divest them of their title, and was absolutely void as to them.

3. The purchasers at such sale, by purchasing and taking possession of said land, constituted themselves trustees, and as such they must account for the value of the use thereof after the termination of the life estate, and surrender possession to the infant remaindermen.

4. When a trustee sells, he must do so in the manner provided by the deed. When a court sells, it must do so in the manner provided by law. (Mountjoy v. Lashbrook, 8 Dana, 34; Young v. Miles, 10 B. Mon., 289; Lewin on Trusts, 431; Perry on Trusts, sec. 520; *Ib.*, 475; Maddox v. Fox, 8 Bush, 402; Johnston v. Louisville, 11 Bush, 533; 13 *Ib.*, 307; ·Ky. River Nav. Co. v. Commonwealth, 13 *Ib.*, 435; Prather v. Davis, 13 *Ib.*, 372; Thompson v. Buckannon, 2 J. J. Mar., 417; Tolby v. Price, 17 B. Mon., 411; Orth v. Cluts, 18 *Ib.*, 225; 18 *Ib.*, 572; Foster v. Wade, 4 Bush, 628; Code of 1854, section 748; Bishop on Cont., secs. 575, 579, 582, 583, 598, 602; Story on Cont., secs. 634, 638, 639, 654, 658; Hildreth v. Forest, 4 J. J. Mar., 219; Thompson v. Thompson, 2 B. Mon., 166; Hunter v. Miller, 6 *Ib.*, 619; Stevenson v. Hagan, 15 B. Mon., 284; Allen v. Shadburn, 1 Dana, 72; Triplett v. Gill, 7 J. J. Mar., 436; 1 Bibb, 569; 16 Wall., 317; chap. 86, art. 5, Rev. Stat., as amended by the Acts of March 10, 1854, and Feb. 16, 1858; McGaughey v. Henry, 15 B. Mon., 383; 17 B. Mon., 516; Perry on Trusts, secs. 509, 510, 511; Hill on Trustees, 339, 340; Rorer on Jud. Sales, secs. 58, 59; 1 Bibb, 409; Perry on Trusts, secs. 499, 779; Sugden on Powers, 213, 214, 324, 327; Hill on Trustees, 472, 478, 584; Lewin on Trusts, 296; Bartlett v. Marshall, 2 Bibb, 470; Kenny v. Talbot, 4 *Ib.*, 40; Hunt v. Stephenson, 1 Mar., 570; Winters v. January, Litt. Sel. Ca., 13; 3 Mon., 287; 5 *Ib.*, 410; 2 J. J. Mar., 66; 6 *Ib.*, 45; 5 *Ib.*, 66; 4 B. Mon., 15; 1 Mar., 569; 3 *Ib.*, 77; 12 B. Mon., 600; 2 *Ib.*, 456; Tyler on Infancy and Cov., sec. 119; 16 Ill., 354; 4 Paige, 115; 6 *Ib.*, 353; 2 Rand. (Va.), 409; Freeman on Judgments, sec. 545; 2 How. Pr., 215; 12 Abb. Pr., 403; 31 Md., 336; 5 Litt., 304; 3 Mar., 44; 4 Bibb, 320; 2 J. J. Mar., 64; 1 Mar., 179; *Ib.*, 526; 5 B. Mon., 273; Barb. on Parties, 321, 326, 334, 336, 439, 529, 530, 443, 519; Daniel's Ch'y Prac., 190, 227, 228, 229, 230; 1 Atk., 590; Perry on Trusts, secs. 875, 881, 873, 890; Story's Eq. Pl., secs. 207, 165, 143, 145, 146, 147, 148, 149, 163, 164, 165, 185; Mit. & Tyl. Pl. and Prac., 16; 18 Gratt., 152, 651; 4 Com., 257; 8 How., 495; 4 Bibb, 453; Cooley on Con. Lim., 435, 460; Rev. Stat., sec. 1, art. 8, chap., 27; Act January 17, 1854; 2 Stant., 534; Act December 19, 1837; 2 *Ib.*, 537; Code of Prac., secs. 18, 19, 776, 770, 775, 875, 909; 1 Malloy, 525; 6 Hill, N. Y., 417.)

Walker, &c., v. Smyser's ex'rs, &c.

BARRETT & BROWN, JACKSON & PHELPS, AND BARNETT, NOBLE & BARNETT FOR APPELLEES.

1. Burks, the trustee, admitted his duty to sell, admitted the written request, admitted that the interest of Mrs. Walker required the sale, and yet refused to sell except under aid and advice, in fact, the coercion of the court, and compelled the party in interest to ask the "aid and advice" of the court to enforce the execution of the trust.

2. The form of the suit is of no consequence. It seems to be "sticking in the bark" to say the court made the sale in the sense of sales of infant's or married women's lands under the statute. Such is not the case.

3. No one need be a party in any case where, if made party, he would not be allowed to answer or resist the relief asked. (5 Mon., 245.)

4. A mere power of appointment is not a trust power. Such may or may not be the effect of a power of appointment according to its terms. (Hill on Trustees, 544, note 1, 543; Perry on Trusts, sec. 883; O'Bannon v. Musselman, 2 Duvall, 525; Jennings v. Low, 4 Met., 105; 17 B. Mon., 117; Todd v. Sterrett, 6 J. J. M., 432; Story's Eq. Pl., sec. 231; Carey v. Brown, 92 U. S., 155; 2 Ch. Eq. Dig., 1700; Story's Eq. Pl., secs. 76, 96, 140; Allen v. Graves, 3 Bush, 492.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

Mrs. Nannie Walker owned, as her general estate, certain lands which she and her husband conveyed to her brother, James B. Burks, in trust for her separate use during life, and in remainder to her children.

The following provisions of the deed are material to the issues which are involved in this case, to-wit:

"*First.* The said James B. shall hold said tracts, lots, and slaves and their increase, for the separate and sole use of said Nannie for and during her life, and after her death for her child or children.

"*Secondly.* In the event of her death, leaving grandchildren, they are to take the part of their deceased parent or parents, and the property hereby conveyed is to be so held; and, in the event of said Nannie leaving no child or children, grandchild or children, the estate hereby conveyed is to pass to their heirs at law.

*Thirdly.* The said James B. shall permit the said Nannie to use and enjoy said tracts (of land) . . . and collect the rent . . in her own name, or for her. he may rent out . . said tracts . . and collect and pay over to her the rent . . of the same, taking her receipt therefor, which, when given, shall be a valid and complete discharge to him therefor.

" *Fourthly.* Upon the *request in writing* of said Nannie, said James B. *may, if he deem it to her interest, sell all or any of said tracts, lots, or slaves, and invest the proceeds in any other estate or stocks he may deem to be most advisable to her interest to buy, and when so sold or invested the estate or stocks acquired to be held upon the same uses and trusts as that sold;* but said James B. *may require a petition in chancery to be brought, asking a sale and reinvestment,* and on such petition being filed against him the chancery court shall order such sale, and direct and see that such investment is made so as that said James B. shall be protected from all liability for such sale and reinvestment. To such petition said James B. shall be made a party, and said court shall, on such petition, have full power to order such sale, and pass the entire title in fee-simple to the purchaser or purchasers, and the estate or stocks acquired with the proceeds of such sale to be held upon the uses and trusts mentioned herein."

The deed was acknowledged and delivered on the 20th day of February, 1859, and on the 19th of March following Mrs. Walker and her husband filed a petition in the Louisville chancery court against the trustee, James B. Burks, Mrs. Walker being made a defendant also to the petition, alleging that, although a written request had been made of the trustee, he declined to sell the lands, and required a petition to be brought asking a sale and reinvestment; that she has no other estate than the lands, which

do not yield her a support; that it would be greatly to her interest to sell them, which the defendant admits.

To the petition the trustee answered, admitting that "he required the petition to be filed, and that the real estate sought to be sold is unproductive, and ought to be sold, and the proceeds reinvested. It yields but little, and is insufficient for plaintiff's support. If sold and reinvested, estate or stocks could be purchased therewith which would yield a support. He asks a sale of the said real estate, and an investment of the proceeds in other real estate."

A decree was rendered ordering a sale of the land to be made, which was executed by the marshal of the court, and A. Harbeson was the highest bidder for lot 1 of 34 acres, 32 poles, and J. B. Parks for lots 2 and 4, containing 47 acres, 2 roods, and 30 poles.

On the 2d of December, 1859, the sales having been confirmed, deeds were executed to Harbeson and Parks, respectively, for the lots bid for by them as aforesaid.

Just twenty days thereafter, for precisely the same consideration bid by them, Harbeson and Parks conveyed the lots 1, 2, and 4, to which they had received the title, to the trustee, James B. Burks, who thus became the absolute owner of the property of his *cestui que trust*.

Mrs. Walker died in 1863, leaving the appellants, Charles and Elizabeth, her only children and heirs, and entitled in remainder to the trust property. On the 14th of February, 1863, John Burks, a brother of James B. Burks and Mrs. Walker, was appointed guardian of Charles and Elizabeth, and obtained an order in the nature of a loan to withdraw the money which had been paid into the chancery court for said lots of land.

Having obtained the possession of the money, John Burks. failed to reinvest or account for any part of it, and became insolvent.

James B. Burks, on the 12th of March, 1864, conveyed. to Lewis Smyser said lots 1, 2, and 4, containing 81 acres, 3 roods, and 22 poles.

On the 22d September, 1874, in consideration of $90,000, John Burks and wife conveyed to Lewis Smyser 350 acres. of land. As part of the consideration Smyser executed his obligations for $25,000 to Mrs. Burks, and conveyed a house and lot, in the city of Louisville, to John Burks.

Smyser, becoming disquieted about his title to the 81 acres, 3 roods, and 22 poles bought by him of James B. Burks, brought this action against Charles and Elizabeth Walker to quiet the title, and also against John Burks and wife for indemnity, in the event Charles and Elizabeth should be adjudged the owners of the land, and caused an injunction to issue against Burks and wife to prevent the wife from disposing of his obligations executed to her, and enjoining the sale of the house and lot conveyed to Burks, as stated above.

Smyser charged that John Burks and Charles and Elizabeth Walker had conspired to recover the land from him for the latter, and that John Burks had fraudulently caused the notes for $25,000 of the consideration of the 350 acres to be executed to his wife, for the purpose of cheating his creditors; that the transfer of the $25,000 was wholly voluntary and fraudulent.

Other necessary and proper allegations were made in explanation at length of these transactions, which need not. be mentioned.

Burks and wife controverted all the material allegations
of the petition, and separately pleaded that the obligations
for the $25,000 were executed to Mrs. Burks, in considera-
tion of her potential right of dower in the 350 acres sold by
John Burks to Smyser.

Pending the proceedings, a guardian *ad litem* was ap-
pointed to defend for Charles and Elizabeth Walker, who
were infants, and John Burks was removed as their guar-
dian, and Mr. Shipp appointed in his room.    •

A rule was awarded against Shipp, as their guardian, to
answer Smyser's petition, but, before answering, resigned
his guardianship, and the appellant, W. W. Gardner, was
appointed guardian to them.

He appeared, and moved to strike out a portion of the
answer filed by the guardian *ad litem*, and to file an answer
and counter-claim for his wards, alleging, in substance, that
the purchase by Harbeson and Parks was not *bona fide*, and
was fraudulent, that their conveyances to James B. Burks
were fraudulent devices of said Burks to cheat and defraud
his *cestuis que trust*, Charles and Elizabeth, and deny that he
took any title to said 81 acres, 3 roods, 22 poles by their
conveyances; that Smyser knew all of these facts at the
time of the conveyance to him by Burks, hence took no
title under the deed from him; that Charles and Elizabeth
were in being when the deed of trust was executed by
their mother to James B. Burks in 1859, and were not
made parties to the suit in which the decree to sell the trust
estate and reinvest the proceeds was rendered; that the
decree was therefore void, and did not divest their interest
in remainder in the lands sold in pursuance of it.

The court refused to allow the regular guardian to make
defense, but intrusted it to the guardian *ad litem*, and re-

jected the answer and counter-claim offered by the appel-
lant Gardner, as guardian, and he appeals from that order,
and from the judgment pronounced against his wards quiet-
ing Smyser's title, and Charles and Elizabeth Walker also
appeal from that judgment.

Was the judgment of the Louisville chancery court, ren-
dered in 1859, for the sale of the trust property, void,
because the infant remaindermen, Charles and Elizabeth
Walker, were not parties to the suit?

We will not stop to indicate the arguments of the various
counsel, and dispose of them in detail; but we will, in a
general way, discuss the law advanced by all, rather seeking
conclusions than determining supposed propositions of law
not deemed applicable to the facts of this record.

According to Heming v. Harrison, 13th Bush, 723, courts
of chancery have no inherent power to sell the real estate of
persons under disability.

And this seems to be the conclusion to which the author-
ities tend in all the States where statutory provisions regu-
lating the sales of the real estate of infants and married
women are in force.

The provision embraced by section 32, article 2, of our
state constitution, seems to require the legislature to confer
such powers on the courts by general laws, which was done
by the legislature immediately after the adoption of the
constitution; and since, various modifications of the law,
looking to the preservation of the estate of persons labor-
ing under disability, have from time to time been passed.

It may, therefore, be considered as the settled law of
this state that the powers of the courts of equity simply
to sell and reinvest infant's real estate are statutory and not
inherent; and we have never heard it intelligently asserted

that the acts of persons, either by deed or otherwise, can confer jurisdiction upon a court where it would have none but for such acts; and that portion of the deed of trust executed by Mrs. Walker, attempting to confer jurisdiction, will be wholly disregarded, and the deed construed as if it did not embrace it.

But we do not think that the absence of inherent powers on the part of the chancellor ordinarily to sell infant's real estate affects the question under consideration, as the sale, by the decree of 1859, was not the sale of infant's real estate within the meaning of any of the statutes on that subject in Kentucky.

While the forms of the proceeding were similar to those pursued in obtaining judgments for the sale of infant's estate under the statutes, they were substantially an application by the life-tenant, Mrs. Walker, to the chancellor to compel her recusant trustee to execute the powers of his trust.

It is clear from authority that the chancellor could not legally compel the trustee to exercise the power at the request of Mrs. Walker, if the power be a mere naked power, or if the power be coupled with a trust, and the refusal of the trustee was a *bona fide* exercise of the discretion confided in him by the deed of trust.

The classification of powers by the best text-writers and authorities are divided into naked powers and powers coupled with a trust, or powers which imply a trust; and the rule regulating the power of the enforcement and supervision of trusts by the chancellor has never restricted his authority, where the trustee, invested with a power coupled with an express trust, is proceeding to pervert or abuse the trust, or refuses, without excuse, to execute his powers,

thereby disappointing the purpose of his appointment, and defeating the interest which the exercise of his powers would and were intended to conserve and advance. (Brown v. Higgs, 8 Vesey, 572; Story's Equity Jurisp., sec. 1061; Perry on Trust, sec. 248, *et seq.*; Moore's heirs v. Moore's devisees, 4 Dana, 367; University v. Clay, 2 B. M., 386; Berry v. Hamilton, 10 B. Mon., 135; O'Neal and wife v. Beall, *Ib.*, 275.)

The vital question then is, did the facts exhibited by the record of the case, wherein the judgment of sale of the trust estate was rendered, authorize the exercise of jurisdiction by the chancellor? For if they do, the sale is not void, and a purchaser will be protected.

The deed created in Mrs. Walker a separate estate for life, and Charles and Elizabeth were vested with the right to the remainder in fee, after the death of Mrs. Walker; but this right, by the deed which created it, was subject to the power of sale and reinvestment by the trustee, regardless of the consent of Charles or Elizabeth, whenever Mrs. Walker should, in writing, demand that a sale be made, and the trustee deem it to her interest, and *to her interest alone*, to sell.

The petition showed that she did, in writing, demand a sale of the lands, because they were unproductive, and all she had for a support, and their profits were insufficient for that purpose, and it was to her interest to sell and reinvest the proceeds in other lands.

The trustee, by his solemn answer, admitted that these facts were true, and that he knew it was to her interest to sell, but that he had declined to do so, and required Mrs. Walker to appeal to the chancellor, although a sale could have been made by the trustee, and other land or stocks

purchased with the proceeds which would yield a support for her.

What was the chancellor's duty under this state of facts? The trustee was invested with a power to sell; he held a sacred trust in conjunction with that power; he admitted that the lands were not supporting the life-tenant, who had created the trust out of her general estate; that he deemed it to her interest that the lands be sold; that a reinvestment could be advantageously made in lands which would yield a support for her, yet that he refused to exercise his discretion in making the sale, although every fact existed which would make it proper for him to sell and exempt him from all danger of mistake in the exercise of his discretionary powers.

The interest of those in remainder was created with the express condition that the property was subject to transmutation when the facts named in the deed should exist and the trustee deem it to Mrs. Walker's interest to sell.

That such was the condition annexed to the remainder is clear from the fact that the deed dedicated the proceeds of any sale that the trustee was authorized to make to the same uses and trusts as the property sold, and the further fact, which is conceded, that had the trustee exercised his powers and made the sale, the title would have passed, although the remaindermen were neither parties to the sale nor consulted about it.

We can perceive no distinction between a sale made by the trustee and a sale made by the chancellor under a state of facts which leave no room to doubt that the trustee was willfully refusing to perform his known duty, and declining to exercise the power which he ought to have exercised.

The provision in the deed authorizing the trustee to require a petition in chancery to be filed asking a sale, as we have said, conferred no power on the chancellor he did not possess without such a provision, nor did it lessen the jurisdiction of the chancellor to compel an exercise of the discretion by the trustee when he declines to do so in face of his own admission that it is his duty to exercise it, and of the facts which show that his admission is not a mistaken conclusion of his.

Although he required a petition to be filed under the idea that the deed conferred jurisdiction on the court to entertain it, and that he had the right to make the requisition, it is nevertheless true that he did not have any right to do so, and his refusal to exercise his powers for those reasons, which were insufficient, was as injurious to the rights and interest of the life-tenant, and destructive of the purpose of his appointment, as if the alleged reasons for the refusal and neglect of his duty had never existed.

For these reasons we are of the opinion the chancellor had jurisdiction to decree the sale of the trust lands for, and instead of, the trustee who had refused to make the sale on an insufficient reason, whether he believed his reason was sufficient to justify his action or not; the fact still being that he refused to act when he should have acted, and it therefore necessarily follows that the omission to make the appellants, Charles and Elizabeth, parties, did not render the sale void or inefficient to pass the title to persons lawfully permitted to purchase the land.

Having disposed of this view of the case, it now becomes necessary, under the assignment of errors, to consider whether the court properly rejected the answer and

counter-claim and offer of the appellant Gardner to defend Smyser's suit, and prosecute the counter-claim of his wards.

The pleading tendered by the appellant Gardner, as guardian of the appellants, Charles and Elizabeth Walker, embraced a defense and a cross-petition in legal effect.

Newman, in his Pleading and Practice, says: "A counter-claim, however, under the Code, is but another name for a cross-petition, and may be so styled without impropriety, especially in an action prosecuted by equitable proceedings." (Pages 610–618, and see authorities cited in support of the text.)

This was written with reference to the old Code, which was something different from the new Code in regard to the characterization of pleadings in the caption, but the same with reference to the substance of pleadings.

This being the nature of his pleading — an action by cross-petition for his infant wards—we entertain the opinion that he, and he alone, had the right to prosecute it, under the provisions of section 53 of the old Code, which was in force, and governed the proceedings in the suit. That section declares that "the action of an infant must be brought by his guardian or his next friend. Any person may bring the action of an infant as his next friend, but the court has power to dismiss it if it is not for the benefit of the infant, or to substitute the guardian of the infant or another person as the next friend."

It will be seen this section does not provide that the court has power to dismiss the action brought by the regular guardian, and substitute another person for the guardian; it only provides for the dismission of an action brought by a next friend. And we do not understand that the guardian can be deprived of his power to bring an action—original

·or cross—for his ward unless his own interest was in conflict with his ward's, as he is responsible on his bond for neglecting to bring an action when he knows, or has good reason to know, that the interests of his ward demands it; and ·certainly the guardian ought not to be held responsible for neglecting to prosecute actions, and, at the same time, ·deprived of the privilege of doing so by substituting a .guardian *ad litem*, .who is, at most, only responsible for ·costs when he becomes an actor for the infant.   (2 Monsh, 168; 1 Mass., p. 400.)

There is another view of the action of the court in appointing the guardian *ad litem*, based upon the provisions ·of section 55 of the Code, as to the conduct of the defense ·of an infant, that should be noticed.

That section provides that "the defense of an infant must be by his regular guardian, or by a guardian appointed to defend for him, where no regular guardian appears, or where the court directs a defense by a guardian appointed for that purpose."

This section could not, by any reasonable construction, be extended farther than to empower the court to appoint a guardian *ad litem*, to defend in lieu of the regular guardian, ·cases where there is no necessity for a cross-action to obtain .affirmative relief, as, in that event, the guardian *ad litem* would become bound for costs as plaintiff, with no bond, like ·the regular guardian's, to insure the infant from loss against ·neglect or inefficiency; and even where the defense is a mere ·traverse or plea in bar, if the regular guardian appears, there should be a valid reason for denying him the conduct of the defense, such as his interests are opposed to those of his ward, as the Code does not provide expressly or by necessary implication for the appointment of a guardian *ad litem*,

· except where the regular guardian fails to appear or under-
take the defense of the suit.   Had the defense of the infants
not embraced the duty of bringing a cross-action in the
alternative against Smyser and James B. Burks, and John
Burks and wife, we would have felt inclined to affirm the
judgment appointing and continuing the guardian *ad litem ;*
but it being the duty of the regular guardian to institute
such an action in the alternative, by way of cross-pleadings,
to recover the land from Smyser, and in the event of failure
to secure substitution to his rights under the provisional
remedies invoked by him against John Burks and wife, and
to hold John Burks and his property bound for the satisfac-
tion of the demands of the wards whose money this record
shows John Burks, under color of his authority as guardian,
unlawfully obtained possession of and squandered, we are
of the opinion that the court should have permitted him to
file his answer and counter-claim, and afterwards perfected
it by amendment, and controlled the defense and cross-
action for his wards.

While we think the conduct of the guardian *ad litem,* in
the management of the defense, is worthy of praise, his
answer does not charge that Harbeson and Parks bought
the land for Jas. B. Burks, who had no legal right, directly
or indirectly, to purchase or obtain title to the property of
his *cestuis que trust,* and that Smyser had actual knowl-
edge of the illegality of his fraudulent purchase; but the
answer and counter-claim of the regular guardian does, in
legal effect, contain these charges, while not as specific in the
averment of the facts showing the alleged fraud as it should
have been.   This defect, however, was not a sufficient rea-
son for denying his right to defend for his wards; and we
can see no reason why the guardian should not be permitted

to file his pleadings, and litigate that feature of the case with Smyser; for if it should be made to appear that James B. Burks procured Harbeson and Parks to buy the land in their names for him, he was guilty of an illegal act as trustee of the interest of Charles and Elizabeth Walker, and could not thereby divest them of title to their property, and invest himself with it, nor could he invest Smyser with a better title than he held himself, if Smyser had actual knowledge of his bad faith and fraudulent conduct as trustee.

If Smyser, however, had no actual notice, but only constructive notice, from the records and deeds made in the suit to sell the land under the decree of the chancellor, of the fraud of James B. Burks, his title to the 81 acres, 3 roods, and 22 poles of land, bought of the latter, cannot be disturbed.

Should the guardian Gardner, upon the return of this cause, after his answer and counter-claim shall have been filed, fail to perfect it by amendment, setting out the facts as to the alleged fraud of James B. Burks, and Smyser's knowledge thereof before he purchased, and neglects to present appropriate allegations against John Burks and wife to hold him responsible, and secure the property attached or enjoined by Smyser, in the event of failure to succeed against him, for the satisfaction of his wards' demands against John Burks, his cross-action should be dismissed, on the ground of conspiracy with John Burks to defraud Smyser, as the relationship of the parties interested, and the history of this whole transaction, are sufficient to justify the charge of conspiracy made by Smyser, if the derelict uncle, John Burks, is not prosecuted with due diligence, in the manner indicated, for the wards, or by them, if they

·desire to control the action, they having arrived at full age.

The question as to the validity of any incumbrance placed by John Burks on the house in Louisville, conveyed to him by Smyser, in part consideration of the 350 acres of land, ·or whether the notes executed to Mrs. Burks for $25,000 ·of the consideration was a voluntary assignment of that ·sum, or any part of it, by John Burks to her, by reason ·of the excessive valuation of her potential right of dower, ·or from any other cause, will not now be disposed of, as the necessity for doing so has not arisen.

Wherefore, the judgment is reversed, and cause remanded, for further proceedings consistent with this opinion.