## Caulder, et al. v. Chenault's Executor.

(Decided September 24, 1913).

### Appeal from Garrard Circuit Court.

1. Infants—Sale of Infant's Real Estate.—It is firmly settled by an unbroken line of decisions of this court that the powers of courts of equity to sell an infant's real estate, or that of persons under disability, are statutory and not inherent; and that the statute providing for such a sale must be followed.
2. Judicial Sales.—If a judicial sale as made was authorized under any one section of the Code, it is a valid sale, although the parties may through caution or carelessness, also have attempted to join other or additional unauthorized grounds for the sale.
3. Judicial Sales—Sale of Land for Re-investment—Jurisdiction.— Where the mother owned absolutely an undivided interest in a farm, and the remaining interest therein was owned by her children subject to the mother's right of dower and said farm was indivisible, and it was shown to be to the interest of all the parties to sell it and re-invest the proceeds in other land, the circuit court had jurisdiction under section 491 of the Civil Code to order a sale for that purpose.
4. Infants—Appointment of Guardian Ad Litem.—Where a guardian ad litem for an infant defendant was prematurely appointed before the infant had been properly summoned, and the court subsequently entered an order approving and ratifying the former appointment of the guardian ad litem who thereafter filed his answer as required by law, the order of approval and ratification was equivalent to a re-appointment of the guardian ad litem, and his subsequent representation of the infant by filing his answer, satisfied the requirements of the Code of Practice.

GREENLEAF & HERRINGTON for appellants.

T. L. EDELEN, R. H. TOMLINSON and LEWIS L. WALKER for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

In September, 1906, the appellant, Axia Caulder, then Axia Wages, and her husband, John Wages, bought the "Walden Farm" of 216 acres, lying about two miles from Lancaster, for $15,785.52. Of this sum $500 was paid in cash; $12,000 was jointly paid on January 2, 1907, and for the remaining $3,285.52 John and Axia Wages executed their joint promissory note, bearing interest from January 1, 1907.

John Wages died, and his wife, Axia, subsequently married Dallas Caudler. By his first wife, John Wages

left four children, and by Axia, his second wife, he left five children, Martha, Tilton, Hugh, Cleo and Julia Wages.

On January 22, 1908, Axia Caudler paid the lien note given for the unpaid purchase money on the "Walden Farm," which amounted, at that time, to $2,487.72. In the meantime she had also bought the interests of John Wages' four children by his first marriage. She thus became the owner of a one-half interest in fee, and the owner in fee of four-ninths of the other half, with a dower interest in the remaining five-ninths of that half.

On January 28, 1908, six days after she paid the lien note, Axia Caulder individually, and as gaurdian of her four infant children, filed a petition in the Garrard Circuit Court, setting up the combined ownership of the farm; her payment of the lien note out of her individual funds which she alleged she had done for the purpose of protecting the property and to prevent it from being sold for debt; that she was willing to take her dower interest in money under the life tables, she being then thirty years of age; describing the property by metes and bounds, and alleging that it could not be divided without materially impairing its value; that it was in possession; and praying that the land be sold, and after the payment of costs, Axia Caulder be first paid the $3,487.72; that she next be paid her dower in money, estimated under the life tables, and that the residue be divided between the owners of the land. This action was on petition, and no process was issued or served upon any one, and no proof was taken. The petition was not verified, and it was signed only by the attorneys for the plaintiffs. On March 25, 1908, a judgment was entered, describing the land and directing its sale, but without specifying the purpose thereof. This judgment was never executed.

On February 17, 1909, Axia Caulder, in her own right, and her five children by their mother as their statutory guardian joining as plaintiffs, filed an amended petition making her five children defendants; alleging her guardianship of the children; the ownership of the land in the several parties; that the property was not a good investment for the infants, and that their interests therein would be benefited by a sale of the land and the reinvestment of the proceeds in other property, for these reasons; (1) because the property could not be divided without materially impairing its value, and other property could be purchased which could be divided; (2)

that there was "an indebtedness on the property which must be paid," and that a sale was necessary for that purpose; and, (3) that after the payment of said indebtedness the residue of the purchase money could be invested in a farm which would yield a greater income in proportion to its value than the one sought to be sold. The petition asked that the infants should have the same interest in the reinvestment as they had in the "Walden Farm" which they sought to sell, and that the former judgment of March 25, 1908, which had never been executed, should be set aside because no proof had been taken to support the judgment, and no bond had been given to protect the interests of the infants; and further, because it would be beneficial to the infants to have a sale of said land for a reinvestment of the proceeds. The amended petition further prayed that the land be sold for the purpose therein set out; and, after the payment of debts and costs against the same, that the residue of the proceeds of the sale be reinvested in other land according to the rights of the parties as therein set forth, and that a guardian *ad litem* be appointed to represent the infants. On February 19, 1909, Walker was appointed guardian *ad litem* for the infant defendants, and summons was served the same day upon the infant, Martha Wages, who was over fourteen years of age, by delivering a copy thereof to her, and upon the other infants, who were under fourteen years of age, by delivering a copy of the summons to their guardian *ad litem*. Proof was taken, showing that the land was indivisible, badly run down, with no dwelling upon it, and that it would be to the interest of all concerned to have it sold, and the proceeds reinvested in a farm which would be more suitable for their purpose, and free from debt. Although the petition and the amended petition of February 17, 1909, recited that Axia Caulder was then the statutory guardian of her five childern, she was not so appointed until February 25, 1909; but by a second amended petition, filed March 12, 1909, she again set up her appointment as guardian of her children in the Garrard County Court, and her qualification as such guardian. On July 6, 1909, the former appointment of the guardian *ad litem* for the infant defendants was approved and ratified by an order of court, and the guardian *ad litem* filed his answer on that day. On the same day the former judgment was set aside. On July 9, 1909, a judgment was entered, granting the relief sought by

the petition, adjudging that the land could not be divided without materially impairing its value; that it would be beneficial to the infant defendants and the plaintiffs to sell the land for the purpose of investing the proceeds of sale in other lands, and to pay the indebtedness against it; that after the payment of the indebtedness, each party was to have the same interest in the land in which the proceeds should be invested as they respectively had in the "Walden Farm" therein ordered to be sold; and, said farm was ordered to be sold for the purpose aforesaid.

On August 23, 1909, the land was sold to J. W. Elmore and David Chenault for $15,007, for which they executed their bonds. Elmore subsequently assigned the benefit of his bid to David Chenault, who paid the purchase money into court, with interest, amounting in the aggregate to $15,457.21. A subsequent judgment of reinvestment was entered on December 1, 1909, which, for the first time, in terms, adjudged that Axia Caulder had a debt against the Walden Farm and the proceeds of sale, for $3,876.00, which was ordered to be paid, and that the residue of the purchase money, amounting to $10,592.41, after the payment of the debt, costs, taxes, and expenses of the suit, be invested in other lands, of which last named sum it was adjudged that Axia Caulder owned one-half absolutely, and three-ninths of the other half absolutely; that each of her five children owned one-ninth of one-half of said sum, subject to the dower right of their mother in their interests. The judgment further directed the commissioner to reinvest the net proceeds in the purchase of the "College Hill Farm" of 253 acres in Madison County from David Chenault, for $13,390.00, and recited that Axia Caulder was willing to pay the difference of $2,797.59 between the net sum on hand for reinvestment, and the purchase price of said land, and that each vendor should have the same interest in the "College Hill Farm" which she or he had owned in the "Walden Farm," which had theretofore been specifically recited in the judgment. The commissioner was directed to take a deed from Chenault and wife to Axia Chaulder and her five children, each "to have an interest therein equal to one-ninth of one-half of said residuary sum of $10,592.41, in proportion to the purchase price of said farm, subject to the dower right of said Axia Caulder—and the residue of said farm shall belong to said Axia Caulder." The commissioner executed the

deed to Chenault for the "Walden Farm" in exchange for Chenault's deed to the "College Hill Farm," and his acts were approved. Two affidavits were filed, showing that the "College Hill Farm," in which the reinvestment had been made, was worth $60.00 an acre. It was taken in the reinvestment at about $53.00 per acre.

David Chenault died in April, 1910. On December 16, 1911, Axia Caulder, and her five children, by their mother as their statutory guardian, jointly entered a motion in this action to vacate and set aside the judgment and sale made thereunder, and all the subsequent proceedings, upon the ground that they were void.

Several grounds are assigned as the basis of the motion, but the two principal grounds, and under which the others may be considered, are (1) that the suit was brought under section 489, subsection 5, of the Civil Code, and the sale was void because no bond was given to the infants as required by section 493 of the Code; and (2) that the action was not brought by the statutory guardian of the infants—she not having been appointed guardian until after the amended petition had been filed. On the other hand, the Chenault heirs contend the suit was brought under subsection 1 of section 489 of the Code, to sell the land for the payment of the ancestor's debt, as well as under section 490, subsection 2, for a sale of the land and a division of the proceeds on account of its indivisibility and section 491 for a sale of the land for reinvestment in other land; and that no bond to the infants is required in a sale under either of those sections. They further claim that in no event was the sale void as to Mrs. Caulder, because it was made upon her application.

The chancellor overruled the motion to set aside the judgment and sale, and from that order Mrs. Caulder and her children prosecute this appeal.

We will consider the questions in the order in which they are above stated.

1. Was the sale void? It is firmly settled by an unbroken line of decisions of this court that the powers of courts of equity to sell an infant's real estate, or that of persons under disability, are statutory and not inherent; and that the statute providing for such a sale must be followed. Meddis v. Bull, 13 Ky. L. R., 767; 18 S. W., 6; Walker v. Smyser, 80 Ky., 620; Liter v. Fishback, 25 Ky. L. R., 260; 75 S. W., 232; Elliott v. Fowler, 112 Ky., 376.

Subject to the payment of the $3,876 due Axia Caulder, the title to the "Walden Farm" was held as follows: One-half by Axia Caulder, absolutely, plus four-ninths of the other half absolutely, giving her a fee in thirteen-eighteenths, and a dower interest in the remaining five-eighteenths, with the fee of the five-eighteenths in the five children.

The several statutory provisions relied upon by the parties, are as follows:

Subsection 1 of section 489, and subsection 2 of section 490 and section 491 of the Civil Code of Practice, under either of which appellees would sustain the sale, read as follows:

"Sec. 489. A vested estate of an infant or of a person of unsound mind, in real property, may be sold by order of a court of equity—

"1. For the payment of any debt or liability of his ancestor or devisor with which he may be legally chargeable, in an action brought against him pursuant to section 428; or in an action brought against him by a creditor of the ancestor or devisor, unless it be enjoined pursuant to section 436.

"Sec. 490. A vested estate in real property jointly owned by two or more persons may be sold by order of a court of equity, in an action brought by either of them, though the plaintiff or defendant be of unsound mind or an infant—

"2. If the estate be in possession and the property cannot be divided without materially impairing its value, or the value of the plaintiff's interest therein."

Section 489, subsection 5, under which appellants contend the sale was made, reads as follows:

"A vested estate of an infant or of a person of unsound mind, in real property, may be sold by order of a court of equity—

"5. In an action against a person of unsound mind by his committee; or against an infant by his guaridan; or, if the infant be a married woman, by her husband, if he be twenty-one years of age, if not, by her next friend, for a sale of the estate and investment in other property."

Section 491 reads as follows:

"In an equitable action by the owner of a particular estate of freehold in possession, or by his guardian or committee if he be an infant or of unsound mind, against the owner of the reversion or remainder, though he be

an infant or of unsound mind, and against the owner of the particular estate if he be an infant or of unsound mind; or, if the remainder be contingent, against the person, if in being, in whom it would have vested if the contingency had happened before commencement of the action, though he be an infant or of unsound mind, and against the owner of the particular estate if he be an infant or of unsound mind—real property may be sold for investment of the proceeds in other real property."

The statutory provisions requiring a bond to be given to infants in cases wherein their land is sold, are found in sections 493 and 497 of the Civil Code. Section 493 provides that, subject to the provisions of sections 491, 496 and 497, and except the cases mentioned in subsection 2 of section 489, the guardian must execute a bond, with approved surety, to the infant before the sale is ordered, and that if the bond be not given, the sale will be void.

Section 497 further provides, that in the action mentioned in subsection 2 of section 490, the share of the infant shall not be paid by the purchaser, but shall remain a lien on the land until the infant become of age, or until his guardian execute a bond as required by section 493.

In Elliott v. Fowler, 112 Ky., 397, we expressly held that where the bond required by section 493 of the Civil Code of Practice had not been executed to the infant, the judgment and sale were void; that the infant lost no rights under them, and the purchaser took none.

If the sale in this case was made either under subsection 1 of section 489, to pay the debt of the ancestor, or under subsection 2 of section 490 because of its indivisibility, as appellees contend, the sale to the extent it was necessary to pay the debt is not void for a failure to give the bond to the infant, since section 493 expressly excepts sales under section 489, while section 497 provides that the infant's share of the purchase money in a sale under section 490, shall remain a lien upon the land in case the bond required by section 493 was not given.

Furthermore, if the sale is made under section 491, which provides for a sale of land in which one person owns a particular estate, with the reversion or remainder in another, for a reinvestment of the proceeds in other real property, no bond is required to be given an infant owner, but the court is expressly required by subsection

5 of section 493 to retain control of the funds until they be reinvested.

But, if this sale was made under subsection 5 of section 489 for a sale of the infant's estate, and an investment of the proceeds in other property, as is claimed by the appellants, the bond was necessary, and the failure to give it rendered the sale void.

It will be noticed that subsection 1 of section 489 provides for the sale of land owned solely by the infant; while subsection 5 of the same section provides for a sale of lands similarly held for reinvestment in other property. On the other hand, subsection 2 of section 490 provides for a sale of land jointly owned by two or more persons when it cannot be divided without materially impairing its value; while section 491 provides for a sale of the entire estate for a reinvestment of the proceeds where there is a particular estate owned by one person, with the reversion or remainder in another.

These several sections of the Code thus provide for the sale of land in a judicial proceeding in cases where the title and possession are held in any of the several ways above pointed out. In some cases a bond to the infant is required, while in others it is not required, and the difficulty in this case arises out of the peculiar facts, which may be considered as bringing the case within the scope and meaning of two sections of the Code, one of which requires the bond to the infants, while the other does not.

In applying the rule to the case at bar, we will disregard the original petition and the first judgment thereunder of March 25, 1908, since it was abandoned and treated as ineffectual by the amended petition of February 17, 1909, which expressly asked that it be set aside; which was done. Treating the case therefore, as having really started with the amended petition, we find it to be a petition by Axia Caulder in her own right, and as guardian, against her five children, and asking a sale of the land because the interest of the infants therein would be benefited by a reinvestment of the proceeds in other property. She owned absolutely an undivided interest in the land; the remaining interest was owned by her children, subject to her right of dower. She was the owner of a particular estate of freehold in possession. Her children owned the remainder. The property was indivisible and it was to the interest of all the parties to sell it and reinvest the proceeds in other property.

Dower had not been assigned her. There had been no partition of the property. Each of the infants owned an interest in the property as a whole, and this interest was subject to the particular estate of their mother in the property as a whole. As it is quaintly expressed in the common law books, each of the tenants in common was seized *per my et per tout.* The property being indivisible and the interest of all the parties requiring a sale for the reinvestment of the proceeds in other property, the court had jurisdiction under section 491 to order the sale for this purpose.

Subsection 5 of section 493 provides:

''In the case mentioned in section 491, the court ordering the sale shall, by its commissioner, retain the custody and control of the fund realized by the sale until the same is reinvested in real estate, or in such other property as the funds of persons under disability may be invested by authority of law, and the court shall order the money to be paid, by its commissioner, directly to the person from whom the purchase for reinvestment is made, and to no other person, and in which case no bond shall be required.''

The court followed the statute and retained the custody and control of the fund realized by the sale until it was reinvested in other real estate.

The purpose of section 493 of the Code requiring that the guardian of the infant must execute a bond as therein provided in certain cases is for the protection of the infant, to secure to him the purchase money of the land when it comes into the hands of the guardian. The reason that certain classes of case are excepted out of the operation of the section is that in those cases the money does not come to the hands of the guardian. The law does not contemplate that a vain thing shall be done, and it does not require that the guardian shall give the bond in those cases where no money is to come to his hands; for the bond in this class of cases would be an idle form. In the case at bar, the suit having been brought for the reinvestment of the fund in other lands, no money was to come to the hands of the guardian. In sales made under subsection 2 of section 490, the interest of the infant is required to remain a lien on the land until the infant becomes of age or the guardian executes a bond. This provision applies in those cases where the interest of the infant is separated from the other interest. It has no application where the sale is made under section 491

for the reinvestment of the proceeds in other property. The debt of the ancestor had to be paid, and in so far as a sale was ordered for this purpose, no bond was required. The sale was made solely for the two purposes indicated, and, therefore, under the provisions of the Code, the sale was not invalid because no bond was executed by the guardian.

Subsection 4 of section 492 provides that in the action mentioned in section 491 facts must be stated in the petition, and must be proved showing that the sale will benefit the parties interested in the property. All the facts alleged and all the facts proved were relevant to show the necessity for the sale of the property as a whole, and the reinvestment of the proceeds in other property. The sale being authorized under the sections of the Code we have indicated, it is a valid sale although the parties may have also attempted to sustain it under other sections, or upon other grounds.

2. Was the circuit court without jurisdiction because Mrs. Caulder, the plaintiff, was not the guardian of her children when she filed her amended petition on February 17, 1909?

This objection is based upon the theory that this action was brought under subsection 5 of section 489 for a sale of the infants' estate, and the reinvestment of the proceeds in other property. That statute requires such an action to be brought against an infant by his guardian; and, it is insisted that as Mrs. Caulder was not the guardian at the time the amended petition was filed, the statute was not satisfied and that the judgment is invalid. We have above pointed out, however, that this action was brought under section 491 by Mrs. Caulder in her own right, and that being true the objection is without merit. Furthermore, by her second amended petition of March 12, 1909, Mrs. Caulder truthfully set up her appointment and qualification as guardian of her children; and the action having proceeded regularly from that time, the mistake theretofore made was corrected.

And, although the appointment of Walker as guardian *ad litem* on February 19, 1909, before the infants had been properly summoned, was irregular, the irregularity was fully corrected by the order of July 6, 1909, in which the former appointment of Walker as guardian *ad litem* was formally approved and ratified by an order of court, and Walker thereafter filed his answer as required by law. The most the court was required to do

was to appoint a new guardian *ad litem*, and its order formally approving and ratifying the former invalid appointment of Walker was equivalent to a re-appointment; and his subsequent representation of the infants by filing their answer satisfied the requirements of the Code of Practice.

Judgment affirmed.