## Duncan, et al. v. Woods, et al.

(Decided December 4, 1925.)

Appeal from Allen Circuit Court.

1. Guardian and Ward—When Infant Ratifies Sale of Land, Made Under Erroneous or Void Decree of Court by Reason of Failure to Give Bond, Stated.—Where an infant, whose land has been sold under an erroneous or void decree of the court by reason of failure of guardian to give bond either within Civil Code of Practice, section 489, subsection 5, or section 493, receipts or settles for his proportion of proceeds, or unpaid part thereof, after becoming of age, fraud or lack of knowledge being absent, he thereby ratifies and confirms sale, estopping him from thereafter collecting or from contesting its validity.

2. Guardian and Ward—Evidence Held to Show Plaintiff Settled with her Guardian with Reference to Proceeds of Land Sold During her Minority.—Evidence held to show that plaintiff, whose guardian, during her minority, sold land under court order, settled with her guardian more than two years after attaining majority by acceptance of his notes under conditions showing absence of fraud or ignorance.

ROBT. F. VAUGHAN and THOMAS, THOMAS & LOGAN for appellants.

BASIL RICHARDSON, V. H. BAIRD, W. D. GILLIAM and HUGH B. FLEECE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

R. T. Satterfield died in 1904 intestate and a resident of Allen county, leaving surviving him as his only heirs

and distributees his widow, the appellee, Fannie Satterfield, and an infant daughter, the appellant and plaintiff below, Vera Satterfield Duncan, who was only seven years of age at that time. On September 14, 1916, when she was just past 19 years of age she married her co-appellant and plaintiff below, C. P. Duncan. At the time of her father's death he, with his family, was residing in the same residence with his brother J. C. Satterfield, and the latter's wife, the last two having no children. The residence was on a farm in Allen county containing 2,500 acres owned jointly and equally by the two brothers, and it at the time was being operated by them. At the death of R. T. Satterfield there was personal property on the farm jointly owned by the two brothers amounting to about $15,000.00 in value, one-half of which belonged to R. T. Satterfield, the decedent, and it with the one-half undivided interest in the farm constituted about, if not all, of his property. In 1906 J. C. Satterfield qualified as statutory guardian for his niece, and he continued to act as such until after his ward became 21 years of age, which was on July 8, 1918, and on April 2, 1922, he died a resident of Nashville, Tennessee, to which place he had moved from the farm a number of years prior thereto.

On January 29, 1910, the guardian as such, and in his individual capacity, and the widow of R. T. Satterfield, filed an equity action in the Allen circuit court against the infant, Vera Satterfield, in which a sale of the farm was sought. In that petition it was averred that J. C. Satterfield individually owned an undivided one-half interest in the farm; that the widow of R. T. Satterfield was entitled to dower in the other undivided one-half interest owned by her deceased husband, and that the latter owed her the sum of $2,000.00, which he had invested in the farm, and its sale was asked not only for the purposes of division, but for the recovery by the widow of her debt as well as the present cash value of her dowable interests, all of which to be charged to one-half of the proceeds of sale and the balance of that one-half to be adjudged to the infant, and the other one-half to J. C. Satterfield, after payment of costs. The prayer also asked, *inter alia*, that the infant's portion be reinvested in interest-bearing bonds or other safe securities to be held by her guardian until she arrived at the age of 21 years. That action was practiced strictly

according to the Code and resulted in a judgment of sale with a division of the proceeds according to the prayer of the petition, but no bond was executed, as is required in certain cases, by section 493 of our Civil Code. Subsequent orders were made in that case relative to the interests of the infant, which amounted to something more than $24,000.00, one of which was, that upon the guardian executing bond as required by section 497 of the Code his ward's portion should be turned over to him, and in 1912, after the sale in December, 1910, that bond was executed by the guardian and he took charge of the infant's portion of the proceeds of sale, which prior to that date had been invested in purchase money notes for the purchase price of the farm and adjudged to be a lien upon the whole of it. Later, and before the ward became of age, the guardian collected the portion of his ward's proceeds of the sale, the interest on which he had collected each year prior thereto and accounted to her. On August 23, 1920, more than two years after she became of age, the guardian executed his note to her for the sum of $30,531.00, payable two years thereafter, which note she held until the filing of this action on August 29, 1923, without any complaint whatever and without demanding payment from her guardian during his lifetime or from his estate after his death On the same day she executed a receipt to his surety in the bond her guardian executed in 1912 pursuant to the provisions of section 497 of the Code, and in which she forever released and discharged the surety from any liability whatsoever on that bond. In the meantime, the purchaser of the farm sold it to one of the appellees and defendants below, Gen. E. H. Wood, who owned it at the time of the filing of this action and who had put lasting and permanent improvements thereon that enhanced its value many thousands of dollars. The original purchaser, or rather his transferee of the bid at the decretal sale, a Mr. Barlow, died before the institution of this action, and his widow and heirs were made parties defendant. It was filed by Vera Satterfield Duncan and her husband against the widow and heirs of Barlow and his personal representative, Gen. Wood, the present owner of the farm, and the widow of the guardian, and plaintiffs sought to have it adjudged that the female plaintiff was still the owner of one-half undivided interest in the farm, upon the ground that the judgment ordering

its sale was void because no bond was executed pursuant to the provisions of section 493 of the Code. If, however, that relief was not granted them an alternative prayer was that plaintiff be adjudged a lien upon the whole farm to secure the amount of her portion of the proceeds of the sale which she claimed had never been paid to her.

Answers denied plaintiff's right to either of the reliefs sought by her petition, and averred that the sale was not one in which the bond was required by the Code as a prerequisite to a valid sale; but, if mistaken in that, then the answers pleaded a full and complete settlement between plaintiff and her guardian made with full knowledge of the facts on her part, by virtue of which she ratified the sale, even if it was void, and estopped herself from claiming any relief whatever. Appropriate pleadings made the issues, and upon final submission judgment was entered dismissing the petition, to reverse which plaintiff prosecutes this appeal.

Much vigorous argument is made in briefs for plaintiffs upon the contention that the decretal sale was void because of the failure to execute the bond referred to before the entry of the judgment ordering the sale, since it is also contended that the sale was had under subsection 5 of section 489 of the Code, in which case such bonds are required before a valid sale can be ordered and which we have held in an unbroken line of opinions. We are inclined, however, to disagree with that contention, since a sale under the subsection referred to is one where the infant or infants, not only owns the entire interest in the property ordered to be sold, but also where there is no existing particular estate or interest in any portion of it. Caulder v. Chenault, 154 Ky. 777. Since, however, plaintiff for reasons hereinafter stated is not entitled to any relief in this case, even if it be conceded that the sale was one in which the bond was required, we have concluded to devote neither time nor space to a discussion of the complicated question as to when such bond is and when it is not required; or to endeavor to point out the particular section or the subsection under which the order of sale in this case was provided for.

In the cases of Sudduth v. Rowland, 164 Ky. 351; Schlickman v. Dusing, 180 Ky. 506, and same case reported in 188 Ky. 745, we held, in substance, that if an infant whose land had been sold under a decree of court,

after he becomes 21 years of age and with full knowledge of the facts, receipts, or settles for his portion of the proceeds or the unpaid part thereof, he thereby ratifies and confirms the sale, although it may have been made under an erroneous or even void judgment, and by so doing he estops himself from either collecting his proceeds of the sale as directed to be paid by the judgment, or from thereafter contesting the validity of the sale. Of course, for such effect to be given to the act of the infant in making such a settlement or collection, he must have knowledge of the fact that the proceeds collected and settled for were those arising from the sale, and like all other transactions between existing and retiring fiduciaries, the transaction must be free from fraud, and with an understanding on the part of the former infant as to the import of his act. The principle of law so stated is extensively discussed in the Schlickman case, as reported in 180 Ky., and which we will not repeat here, since it is not only a well settled doctrine in this and other courts, but is in conformity with the general doctrines of "ratification" and "estoppel," both of which are of universal application in the adjustment of individual rights. That plaintiff in this case *settled* with her guardian more than two years after she became of age and after full consultation with her husband there can not be the slightest doubt from the evidence in the record. She herself wrote him a list of the notes that she held against him, and he transferred to her other notes covering practically if not the total amount of those of hers against him, and which she collected after his death except the one, *supra,* executed on August 23, 1920. She held that note, as we have said, continuously and never demanded payment of it from either her guardian while he was alive or his estate after his death. She released his surety on the bond he executed in 1912, and in one of the papers she executed it was stated that it was for all that her guardian owed her. There, then, can not be the slightest doubt but that plaintiff did settle with her guardian, and she does not attack that settlement for fraud, either in her pleadings or her evidence; but she does vigorously contend that at the time of the various receipts executed by her she did not know that the proceeds of her land or any portion of it was involved therein.

This case, to our minds, has a marked resemblance of an afterthought and manifests an effort to unjustly

profit at the expense of another when an opportunity seems to present itself. It was brought more than five years after plaintiff became of age and more than one year after her guardian died. During all of the four years that he lived after she became of age she did not raise her voice to express a dissatisfied note at the way he had managed her estate, or to remotely suggest that he had not faithfully and diligently looked after her affairs and justly accounted to her for all of her dues. To establish her claim she attempted to testify, when introduced in her own behalf, that she was utterly ignorant, not only of the fact that her uncle was her guardian, but that even her land had been sold, and her testimony even goes to the length of stultifying her intelligence, although she had been kept almost constantly in school from the day she became of school age until she married, during which time she attended the high school in Glasgow, a grammar school in Nashville, and the Ward-Belmont College for girls in the same city, thus devoting as much as or more than seven or eight years in those three schools, besides taking a course in a business college, followed by her accepting a position as bookkeeper for a business concern in Birmingham, Alabama. Notwithstanding her ignorance as so testified by her, she was compelled to state on cross-examination that most if not all the checks given to her by her uncle and signed by him as her guardian stated (when it was a fact) that they were for interest on the proceeds of her land, and she testified that when the large note was executed to her on August 23, 1920, her uncle told her that it was for the proceeds of her land.

We are, therefore, as much convinced that she knew at the time of the transactions involved, and during the period covered by them, the material facts relating thereto, as we are satisfied about any other thoroughly demonstrated fact. We, therefore, find nothing in the record to substantially differentiate this case from the ones cited above. It is true that in them the infants received cash in their final settlements instead of the note of their guardian, but that fact can not have the effect to alter the applicable principle of law established by those cases, if the note was accepted in lieu of cash, which the proof in this case shows it was. Moreover, we are not at all convinced but that it is shown that plaintiff collected from notes trans-

ferred to her by her guardian and from the proceeds of a policy on his life, enough to extinguish the note of August 23, 1920. She not only collected after his death a particular note known in the record as a $7,000.00 Dickinson note, but her husband as her agent received $29,000.00 from the proceeds of her guardian's life insurance, and that, together with payments made by her guardian from time to time, as shown by his settlements with the county court, aggregate much more than the amount shown to be due her. But however that may be, we are convinced that under the cases *supra,* her cause of action is wholly without merit, and the court did not err in dismissing her petition.

Wherefore, the judgment is affirmed.