## Meade v. Fullerton's Adm'x et al.

### Himes v. Same.

(Decided Nov. 4, 1936.)

H. O. WILLIAMS for appellants.

BROWNING & DAVIS and J. D. ATKINSON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellants, Margaret Meek Meade and Muriel Meek Himes, filed separate suits against the widow, heir, and administratrix of the estate of E. E. Fullerton, deceased, who had been their guardian, to set aside deeds made to him during plaintiffs' minority, and for the recovery of rents. Hearing the cases together, the court denied the relief sought, and the plaintiffs appeal.

When Mrs. Meade, then Miss Meek, was 20 years old she executed a deed on April 24, 1921, conveying her one-sixth undivided interest in certain houses and lots, inherited from her mother, to Mr. Fullerton for $1,500. Of this, $500 was paid in cash and the balance was covered by a one-year note secured by lien on the property. On May 15, 1922, after she became 21 years of age, and after her marriage and removal to Kenton county, she accepted payment of the balance of the purchase price and executed a release of the lien.

When Mrs. Himes, then Miss Meek, was 19 years old she executed a deed on October 31, 1923, conveying her one-sixth interest in the property to Mr. Fullerton for the same consideration, except that only $400 was paid in cash. On April 27, 1926, nearly six months after she became of age and after her marriage and removal to Kenton county, Mrs. Himes also accepted payment of the balance of the consideration due her, and executed a release of the lien.

Mr. Fullerton died March 12, 1926, without having settled his accounts as guardian of these two wards. Their entire estate consisted of their interest in this property.

The petitions filed in October, 1927, with several amendments, set up the facts of infancy and its disability to convey the property. They alleged that the property (in which each of the plaintiffs had a one-sixth interest) was worth $30,000, and that the grantee had wrongfully and fraudulently induced the grantors to execute the deeds. They stated their disaffirmance of the deeds, respectively.

The answers plead estoppel and bar by reason of the ratification of the deeds after the grantors had become of age by accepting the balance of the purchase price and executing the release of the liens. Other pleas contained in the answer need not be considered now.

Mrs. Himes denied the affirmative allegations of the answer in her case, except she admitted the receipt of the purchase price in full. She had not offered to refund the money because Fullerton was indebted to her at the time exceeding that sum. She further alleged that at the time the acts pleaded as ratification were done she was still under the influence of the grantee, and he did not advise her that she would not have to ''stand on her

deed, but, on the contrary, it was necessary for her to release the said lien, and that she had no alternative but to do so." This advice, it was charged, was wrongful and in violation of the confidence the plaintiff reposed in her former guardian, and that her action was for his benefit and not her own. The allegations were traversed.

Mrs. Meade filed no reply, but the affirmative allegations of the answer were merely controverted of record.

The evidence related wholly to the value of the property. Witnesses for the plaintiffs fixed the value at approximately $20,000, which would make the one-sixth interest of each of the plaintiffs worth about twice what they have received. The valuations placed by the defendant's witnesses ran from $6,900 to $10,000, thus showing that a fair price was paid. Considering the qualifications of the witnesses and the conditions related by them, together with the weight to be given the finding of fact by the chancellor that the consideration paid to the plaintiffs was the fair value of the property, we decide the case upon that hypothesis.

All parties agree, of course, that the deeds of the infants were but voidable, and that on the face of the record there was a ratification in each instance after the plaintiffs had reached their legal majority. But, in this connection, as the relation between a guardian and ward is considered one of the most important and delicate of trusts, contracts made by guardians with their wards, such as the acquisition of their property immediately after they become of age, are looked upon by the law with suspicion, and upon the appearance of unfairness or abuse of confidence they will be set aside. Richardson v. Linney, 46 Ky. (7 B. Mon.) 571, 573. It has accordingly been held, in determining a case involving that situation, that the burden lies upon the guardian or those claiming under him to establish by clear evidence that the transaction was entered into freely, voluntarily, and understandingly by the former ward. Fidelity Trust Co. v. Butler, 91 S. W. 676, 28 Ky. Law Rep. 1268; Gregg v. Hedges' Guardian, 227 Ky. 268, 12 S. W. (2d) 854; Strain v. Strain, 237 Ky. 270, 35 S. W. (2d) 306.

In the Meade case there was no plea of reasons or grounds in avoidance of the fact of ratification. In the

Himes case the plea was in effect that Mrs. Himes was still under the influence of her former guardian and he did not advise her that she had the right to have her deed set aside. There was, as we have said, no evidence except as to the valuation of the property. We may accept the premise of the appellants' argument that the burden was upon the defendant to prove that the plaintiffs were not imposed upon, and that their subsequent ratification was free and voluntary. Yet it is difficult to see what more could have been shown than the situation and conditions surrounding the transactions, and that the grantors received and retained the reasonable worth of their property, until there was some evidence indicating compulsion or betrayal of their confidence. Cf. Ryan v. Trimble, 60 S. W. 633, 22 Ky. Law Rep. 1444. While the principal facts in Duncan v. Woods, 211 Ky. 600, 277 S. W. 999, were quite different, in that case an intelligent young lady, after her marriage and about two years after she had made a settlement with her former guardian, undertook to disavow a ratification of affirmance of that settlement after the former guardian's death. Her right to do so was denied. The critical reference to her action is not altogether applicable to the cases at bar, but the conclusion that it seemed to be ''an afterthought and manifests an effort to unjustly profit at the expense of another when an opportunity seems to present itself'' is not foreign. We are of the opinion, therefore, that the decision of the chancellor is correct.

The judgments are accordingly affirmed.